(73 Misc. Rep. 636.)

EGBERT F. ASHLEY CO. v. FIRE DEPARTMENT OF THE CITY OF
ROCHESTER et al.

(Supreme Court, Special Term, Monroe County.   October, 1911.)

MUNICIPAL CORPORATIONS (§ 200*)—FIRE DEPARTMENT—PENSIONS.

The members of former volunteer companies, as well as those of the paid department that succeeded them, are within the scope of the relief intended to be granted by Laws 1864, c. 140, incorporating the fire department of the city of Rochester to accumulate a fund for the relief of indigent members of the department, and the rights of the department are not modified or abridged by Insurance Law (Consol. Laws 1909, c. 28) § 133, imposing a tax on local premiums of foreign insurance companies, nor by the amendments of the charter of the city of Rochester by Laws 1879, c. 9, giving the corporation all the rights and benefits conferred by law upon the fire departments of other cities in the state, and the department is entitled to receive the money derived from the tax referred to.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 547; Dec. Dig. § 200.*]

Action of interpleader by the Egbert F. Ashley Company against the Fire Department of the City of Rochester, the City of Rochester, and others, to determine the person or corporation entitled to receive the tax payable by plaintiff as agent of certain foreign fire insurance corporations.   Judgment in favor of the fire department.

See, also, 142 App. Div. 929, 127 N. Y. Supp. 1110.

McGuire & Wood (Eugene Dwyer, of counsel), for plaintiff.

Joseph W. Taylor, for fire department of the city of Rochester, and Samuel B. Williams as treasurer thereof.

William W. Webb (Benj. B. Cunningham, of counsel), for city of Rochester and Lyman M. Otis as treasurer, etc.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SAWYER, J. This action involves only the question as to which of the above-named defendants is entitled to receive the money due from plaintiff under the requirements of section 133 of the insurance law.

During the early period of its municipal existence, the city of Rochester was protected from fire and fire loss by purely volunteer companies of firemen, collectively known as the fire department of the city of Rochester This situation prevailed until the latter part of the year 1879, when, in pursuance of permissive legislation theretofore had (Laws of 1861, c. 143, § 222), the city reorganized its firefighting system into what is ordinarily spoken of as a "paid department," called the "Rochester fire department," the members of which are employés of the city and under the control of its officials. This paid department superseded the old volunteer department, although for a number of years after its organization several of the volunteer companies retained their connection with it as independent organizations, two of them remaining in the service at the commencement of this action. By chapter 185 of the Laws of 1837 the volunteer companies were organized into a corporation denominated the "Fire Department of the City of Rochester," which is the defendant of that name herein. Its original act of incorporation has been, from time to time, amended in certain particulars; but, under the original law and its amendments, the corporation has continuously exercised its established powers and duties. By chapter 140 of the Laws of 1864, the act of 1837 was amended so as to provide, among other things; that 13 designated persons who were then active firemen of the city of Rochester—

"and their successors, and all such other persons as now are, or hereaf⁺ ᵣ may be, engineers of the fire department of the city of Rochester, or wno may be members of any company recognized by the common council of said city, as belonging to the fire department thereof, or who shall have become entitled to, and received their certificates of, exemption as firemen from the common council of said city, are hereby constituted a body corporate and politic, by the name of 'The Fire Department of the City of Rochester.' "

And by the same act it was further enacted that:

"The general business and objects of said corporation, shall be to accumulate a fund for the relief of indigent members of said fire department, disabled while actually doing duty as firemen, and of such persons as shall have become entitled to, and receive their certificates of exemption as firemen from the common council of said city, and also of such persons as shall be injured while actually doing duty in the employ of said city, in managing or operating the steam fire engines, or other fire apparatus of said city, and of the families of all the aforesaid persons, which fund shall be appropriated and used in no other manner, except as hereinafter otherwise provided."

In view of the facts that the law authorizing the establishment of a paid department by the common council of the city was then in force (1861), and that certain firemen were actually employed and paid for their services, it would seem that the language of this creating statute is sufficiently broad to bring within the scope of the corporation's beneficial activities all firemen of the city of Rochester, whether of the volunteer companies or of the later day paid department. If this be true, the members of the present paid department have not

only the support of the pension fund organized and managed by the city for the relief of themselves and their families, but are entitled to share with their predecessors of the volunteer service in the benefits of their benevolent corporation. However this may be, there can be no question but that the purposes of the original organization of the defendant department were founded in sound public policy and obligation, and that these volunteer firemen ought not now to be lightly deprived of moneys established for their care in time of need, and, in a sense, as an inducement for their gratuitous services, nor without clear and specific enactment to that end. Trustees v. Roome, 93 N. Y. 313–322, 45 Am. Rep. 217. The moneys in dispute are derived from 2 per cent. tax upon local premiums of foreign insurance companies demanded by section 133 of the insurance law.

This tax has heretofore been paid to the defendant fire department without objection and used for its general corporate purposes. The claim therefor now made by the city of Rochester is presumably in the interest of and for the purposes of the pension fund of its paid department. If such claim is well founded, the members of the paid department will, of course, profit at the expense and to the exclusion of the firemen of other days, who will then be deprived of that which was promised them as a sole reward for their faithful and efficient services. I do not overlook the allegation of the city that the defendant fire department has an accumulated fund sufficient for its purposes. That it has an accumulated fund is conceded, but that it is sufficient for its purposes is not shown, nor does equity permit the city under such circumstances to say what is sufficient. Neither does the fact that it has such a fund, if it be true, deprive the department of vested legal rights. Section 133 of the insurance law is a re-enactment without change of section 133 of chapter 690 of the Laws of 1892, which last-mentioned act had its inception in section 5 of chapter 178 of the Laws of 1849. This act of 1849 underwent various amendments, but, when it finally found place in the insurance law, was substantially without change, except the exemption of the cities of New York and Buffalo from its operation, and a provision that it should be operative only in a municipality having a fire department, company, or organization. The object of the last-mentioned amendment is apparent, and the exemption of the cities of New York and Buffalo is easily understood by reference to certain special laws enacted for their government. For a short time the city of Albany, also, was exempt from its operation; but the repeal of that exemption has not, in my judgment, the argumentative force now claimed for it by the city of Rochester. The most that can be said is that by it that city was left in the same situation as is the city of Rome, viz., subject to the peril of deciding correctly between two statutes seemingly in conflict.

So far as the law affects or relates to the city of Rochester, it has remained unchanged to the present day; and its inclusion in the codification act of 1892, and re-enactment in the Consolidated Laws of 1909, was not, in my opinion, intended by the Legislature to work a revocation of the rights or the privileges theretofore granted to the defendant, the fire department of the city of Rochester.

Although by the act of 1892 that of 1849, with its several amend-ments, was specifically repealed, and later, by the insurance law of 1909, the codification act of 1892 was in terms repealed, the re-enactment of those various laws in the same language, so far as affects this city, would seem to indicate, in the absence of express repeal of the defendant fire department's rights under its organizing laws, or other declaration to the contrary, the purpose of the Legislature to continue those rights and benefits to it as they had theretofore existed.

Such, it appears to me, is the inevitable inference from the special circumstances here displayed, and I think such construction not in conflict with Pratt Institute v. City of New York, 183 N. Y. 151, 75 N. E. 1119; People v. Jaehne, 103 N. Y. 182, 8 N. E. 374; City of Buffalo v. Lewis, 123 App. Div. 163, 108 N. Y. Supp. 450; 192 N. Y. 193, 84 N. E. 809, cited by the learned corporation counsel. It is evidently intended by the Legislature (Gen. Constr. Law [Consol. Laws 1909, c. 22] § 95) and that also apparently confirmed by the subse-quent placing in the statute law of sections 149, 149a, 149b, and 149c of the insurance law, wherein the Legislature clearly recognized the existing rights of volunteer companies by providing for the main-tenance of the Firemen's Home at Hudson, N. Y., by them conducted. It must be borne in mind that there are many benevolent corporations in this state similar to that of this said defendant which have been created by various acts of the Legislature, and have in their respective localities the same rights to the moneys derived under this same law.

If, by judicial construction based on implication, the fire depart-ment of the city of Rochester is to be deprived of its income from this source, each of them will be by such holding likewise so deprived. I cannot bring myself to believe that it was intended by the codifica-tion and consolidation of the insurance laws (apparently only done for convenience and ease of reference) to thus reverse a deliberate and well-defined policy of the state, adopted for the benefit of volunteer fire-men and consistently followed for many years. If such had been the intention, it would have been, in my judgment, manifested by pos-itive and unmistakable legislative action, and not left to the courts to make known by judicial construction.

After the passage of the act of 1849, the Legislature, by chapter 78 of the Laws of 1860, amended the act of 1837, under which the de-fendant fire company was incorporated, so that, among other things, said defendant should "have and be entitled to all the rights and ben-efits conferred upon the fire departments of other cities by the act of March 30, 1849 (Laws of 1849, c. 178), in relation to insurance com-panies." Its charter was again amended by chapter 475 of the Laws of 1863, and still again by chapter 140 of the Laws of 1864, both of which amendatory enactments conferred the same rights and in the same language. No change was thereafter made until 1879, and be-yond question until then the moneys derived from the 2 per cent. tax were payable to the treasurer of said incorporated fire department. In 1879, by chapter 9 of the laws of that year, its charter was again amended. This was the year in which the paid department was or-ganized, although legal authority therefor had rested upon the stat-ute books since 1861. In this last-mentioned amendment, said corpora-

tion was given "all the rights and benefits conferred by law upon the fire departments. of other cities in this state." Among other rights and benefits conferred upon the fire departments of other cities was that of receiving through payment to the treasurer thereof the 2 per cent. tax in question; and, while in this amendment reference to the statute of 1849 was omitted, the language is a substantial re-enactment of the former amendments and confirmed the right of the corporation to receive the tax moneys in the same manner as the fire departments of other cities.

No amendment has since been made to the charter of the defendant fire department; and, the enactment of the insurance law not having operated as a repeal thereof, its right to these moneys and to require their payment to its treasurer remains unchanged.

Judgment is ordered in accordance with the foregoing. Judgment accordingly.