(162 App. Div. 215)

PEOPLE ex rel. DAILY CREDIT SERVICE CORPORATION v. MAY, Secretary of State. (No. 104—9.)

(Supreme Court, Appellate Division, Third Department. May 6, 1914.)

1. INSURANCE (§ 2*)—INCORPORATION—SCOPE OF BUSINESS—GENERAL LAWS— "INSURANCE."

A mercantile agency corporation organized under the General Business Corporation Law (Consol. Laws, c. 4) may amend its articles of incorporation so as to authorize it to guarantee the accuracy of its reports at the time the report was made, and to specify the amount of its liability, not to exceed the loss sustained by the creditor, such guaranty not being a guaranty against loss by the merchants by reason of their extending credit so as to make the company a credit guaranty company, within Insurance Law (Consol. Laws, c. 28) § 170, subdiv. 2, and not being any other form of insurance, which is defined to be an undertaking for a consideration, comparatively small, to guarantee the insured against loss from certain risks, specified in the contract, which risks are in the future and not in the past, except in some cases of marine insurance where the loss may be past, but unknown to the parties.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1½; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 4, pp. 3674–3677.]

2. MERCANTILE AGENCIES (§ 3*)—CONTRACTS FOR INFORMATION—LIABILITY.

One who undertakes to furnish information as to the credit of individuals or corporations is liable, in the absence of an express contract, for the negligent performance of that contract, and an agreement to fix the amount of such liability in advance does not make the contract one of insurance.

[Ed. Note.—For other cases, see Mercantile Agencies, Cent. Dig. § 3; Dec. Dig. § 3.*]

Kellogg and Howard, JJ., dissenting.

Appeal from Special Term, Ulster County.

Mandamus by the People, on the relation of the Daily Credit Service Corporation, against Mitchell May, as Secretary of State. From an order of the Supreme Court denying the relator's motion for per-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

emptory writ of mandamus, the relator appeals. Reversed, and peremptory writ granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Koenig, Goldsmith & Sittenfield, of New York City (Samuel S. Koenig and Oliver L. Goldsmith, both of New York City, of counsel), for appellant.

Thomas Carmody, Atty. Gen. (Wilber W. Chambers, Deputy Atty. Gen., of counsel), for respondent.

WOODWARD, J.   [1] The appellant, the Daily Credit Service Corporation, is organized under the Business Corporation Law for the purpose of conducting the business of a mercantile reporting company. It has submitted to the Secretary of State a proposed amendment to its certificate of incorporation, and this the Secretary of State has refused to file on the ground that it contemplates an insurance business within subdivision 2 of section 170 of the Insurance Law. The question presented by this appeal is whether this proposed amendment does authorize the appellant to conduct an insurance business, it having been determined at Special Term that this is the effect of the amendment. The proposed amendment reads as follows:

"To enter into contracts with merchants for the purpose of supplying the merchants with financial reports or opinions concerning the business responsibility of the customers of such merchants. Such financial reports or opinions shall state only the financial condition of the subject of the report in respect to assets, liabilities, surplus, solvency or insolvency, and kindred things, at the time of the investigation or date of the financial report or opinion; provided, however, that the corporation shall not assume liability for subsequent changes of the financial condition of the subject of the report or results thereof. These contracts shall provide among other things, that the company is responsible to the merchants for the accuracy in material respects of such financial reports or opinions and shall provide a measure of damages for the liability of the company to the merchants in the event that the financial report or opinion is inaccurate in material respects, and not otherwise. The measure of damages so to be provided in the contract shall not in any event exceed the amount of credit extended by the merchant to the subject of the financial report or opinion and the company reserves the right to limit its liability to a definite sum, to be fixed in the contracts between the company and the merchants. The damages to be paid by the company to the merchants shall not at any time exceed the amount of loss actually sustained by the merchants."

[2] There can be no doubt of the right of an individual, or an authorized corporation, to undertake the work of collecting information as to the financial standing of merchants and dealers in goods, and of furnishing such information to those who are willing to pay for the same, and, in the absence of an express contract to the contrary, such person or corporation would undoubtedly be liable for damages resulting from a negligent performance of the conditions of the contract to furnish such information. Xiques v. Bradstreet Co., 70 Hun, 334, 24 N. Y. Supp. 48, affirmed on opinion below 141 N. Y. 605, 36 N. E. 740. Nor does any good reason occur to us why an individual or a corporation might not guarantee the accuracy of its information, agreeing to pay a fixed sum, up to the amount of any loss which

should be sustained by reason of the inaccuracy of such information. Of course, if the corporation proposed to assume the risk of losses· occasioned by selling goods to the subject of the report, if it undertook to guarantee the credit, there would be an element of insurance involved in the contract, and the business could not be transacted except under the provisions of the Insurance Law.  As we understand it a contract of insurance contemplates' that the insurer assumes a risk, a "risk" being defined as "the degree of hazard or danger upon which the premiums of insurance are calculated."   34 Cyc. 1791, citing Century Dictionary.  See, also, section 24, Insurance Law, limiting risks.   He undertakes for a comparatively small, consideration to· guarantee the insured against risks arising from certain perils specified in the contract, and the agreement always contemplates that the risk is one which is in the future, except, perhaps, in the case of a marine policy, where the ship is at sea, when the contract may provide for the risks of the voyage, even though the damage or loss may have actually occurred at the time the policy is written, this fact being unknown to the parties.  "Insurance, in its most general and comprehensive signification, is a system of business by which one· party, for an agreed consideration, proportionate to the risk involved,. undertakes to a specified extent and under stipulated conditions to· indemnify another against pecuniary loss arising from the destruction of or injury to property from certain perils," says the American & English Encyclopedia of Law (volume 16, p. 838), and this is in substance stated by the court in Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 462, 14 Sup. Ct. 379, 38 L. Ed. 231.

The contract· of insurance has been termed an aleatory contract,. for the reason that it is one involving risk or hazard.  It is, however,. very different in its nature from a mere wager.  In the latter the· risk of loss is created by the contract itself; in the former the risk exists independently of the contract, and the insurance merely shifts the liability from the one party to the other.  May on Insurance, § 5; Porter on Insurance, § 7; 16 Am. & Eng. Ency. of Law, 839, 840. Webster defines "insurance":

"The act of insuring, or assuring, against loss or damage by a contingent event; a contract whereby, for a stipulated consideration, called premium, one party undertakes to indemnify or guarantee another against loss by certain specified risks."

So we find Mr. Justice Bradley declaring in Insurance Co. v. Dunham, 11 Wall. 1, 30, 20 L. Ed. 90, that:

"If we carefully analyze the contract of insurance we shall find that, in effect, it is a contract, or guaranty, on the part of the insurer, that the ship or goods shall pass safely over the sea, and through its storms and its many casualties, to the port of its destination; and if they do not pass safely, but meet with disaster from any of the misadventures insured against, the· insurer will pay the loss sustained."

And in the course of the opinion it is pointed out that the system of insurance grew out of the maritime law, and he says:

"The next step in the system was that of insurance upon premium.  Capitalists, familiar with the risks of navigation, were found willing to guaranty against them for a small consideration or premium paid."

Through all the authorities runs this idea, that insurance is a guaranty against the damage or loss to result from a future event, the contract of insurance being executed as to the insured by the payment of the annual premium, while it is wholly executory on the part of the insurer, whose undertaking depends upon a future event. 16 Am. & Eng. Ency. of Law, 840; Cohen v. N. Y. Mutual Life Ins. Co., 50 N. Y. 610, 10 Am. Rep. 522. Insurance would be gambling were it not for the policy of the law which requires that the insured shall have an insurable interest, and that he shall not receive more than the actual loss sustained, not exceeding the sum stipulated. 16 Am. & Eng. Ency. of Law, 840.

No authority is asked to guarantee against any future contingency. The relator merely seeks authority that its contracts may "provide, among other things, that the company is responsible to the merchants for the accuracy in material respects of such financial reports or opinions and shall provide a measure of damages for the liability of the company to the merchants in the event that the financial report or opinion is inaccurate in material respects, and not otherwise." That is, it asks for authority to guarantee the accuracy of its reports upon the financial condition at a given time of any person, association, or corporation whose affairs shall be inquired into for merchants or others employing the relator, and to limit this liability so that in no event shall it "exceed the amount of credit extended by the merchant to the subject of the financial report or opinion, and the company reserves the right to limit its liability to a definite sum, to be fixed in the contracts between the company and the merchants." It is further asked that the damages shall not at any time exceed the amount of loss actually sustained by the merchant.

None of these provisions are in contravention of the provisions of subdivision 2 of section 170 of the Insurance Law, which provide that corporations may be organized to "guarantee and indemnify merchants, traders and those engaged in business and giving credit from loss and damage by reason of giving and extending credit to their customers, and those dealing with them, which shall be known as a credit guaranty corporation," etc. This statute provides for insuring merchants and others against losses from their bad accounts; it guarantees, in the event of losses on credits, under certain conditions, to make good such losses. It does not contemplate a commercial agency, designed to investigate individuals and corporations and to report upon their solvency as the basis of credits to be extended, but it provides for a corporation to insure those extending credits against the risks of losses from bad debts. It is designed strictly as an insurance business, basing its premiums upon the risks to be assumed, calculated upon the basis of averages of losses under given circumstances, the most of such corporations basing their rates upon the accounts contracted upon the foundation of the ratings of the commercial companies. That is, if the merchant or dealer sells to customers with a low rating in the commercial agencies the premiums demanded are much higher than those where the dealings are with highly rated customers, and the whole system is worked out on the basis of insurance.

In the matter now before us, on the contrary, the relator makes contracts ·with the merchants and dealers to give them information as to the responsibility of their customers. The relator would be liable at common law for damages growing out of the negligent performance of such a contract, and the amended charter merely seeks to authorize the relator in making contracts for this service to agree upon the amount of the damages which may be collected in the event of the information not being correct, upon the same principle that a common carrier is permitted to limit its liability to the agreed value of the article offered and accepted for transportation. It seeks to have made definite and certain that which might otherwise remain to be determined by litigation, so that it may at all times know the extent of its liabilities.

This is not insurance; it is merely permitting the corporation to charge for and receive the value of its services in their relation to the responsibility assumed. It does not guarantee the solvency of any one; it merely guarantees that the report which it makes is at the date of such report a true statement of the facts which it sets forth, and limits its responsibility to such report, stipulating that in no event shall the damages exceed the amount of the credit which may be extended upon the basis of such report. This does not assume to pay any damages where the report is truthful and accurate; it does not assume any liability whatever for the credit extended, unless the credit was extended upon the basis of a report which was in fact inaccurate and false in material respects; and then it merely seeks to have the amount of the damages fixed by contract rather than by actions at law. It is one thing to guarantee the accuracy of one's own work, and quite another to assume the risk of future insolvency. We apprehend that any individual could make a contract with a merchant that he would investigate the financial condition of the customers of such merchant, guaranteeing the accuracy of his statements in material respects and provide for liquidated damages, and that no one would ever suggest that he was violating the Insurance Law, or that the contract amounted to insurance; and, as the Business Corporation Law contemplates a system of corporate business such as individuals may properly carry on, we see no reason why the relator should not be permitted to amend its certificate of incorporation in the manner suggested.

We have no quarrel with the court in Shakman v. U. S. Credit System Co., 92 Wis. 366, 66 N. W. 528, 32 L. R. A. 383, 53 Am. St. Rep. 920, in its definition of a credit insurance corporation; we agree that the "peril of loss by the insolvency of customers is just as definite and real a peril to a merchant or manufacturer as the peril of loss by accident, fire, lightning, or tornado, and is, in fact, much more frequent"; but we do disagree with the court at Special Term in the theory that the relator proposes to accept this peril for a consideration in contracting to furnish information as to the financial condition of a customer and guaranteeing that that information is correct as of the date thereof. The relator's contract merely accepts the responsibility for its own work. It undertakes to make an investiga-

tion and to give an assurance that the facts which it states are true as of the particular day, disclaiming any intention to accept responsibility "for subsequent changes of the financial condition of the subject of the report or results thereof," thus excluding all of the element of risk as to the future, which is the distinguishing characteristic of the contract of insurance. Clearly if a ship carpenter should undertake to examine a vessel and to make a report upon its condition, guaranteeing that his report as to the seaworthiness of the vessel was accurate and true as of the date of his report, and undertaking to pay damages in an agreed amount if loss was suffered by reason of any substantial error in the facts, he would not be held to insure the voyage of the ship. His responsibility would depend entirely upon the truth of his statements as of the date of their making, and the fact that by some accident the ship went down, he would not be called upon to answer in damages, unless it could be shown that the vessel was not as represented, and that the damages resulted because of the defect not disclosed by the report; and the same thing is true of the report which the relator proposes to make. It is not proposed to guarantee the voyage of the merchant or dealer; it is only to guarantee that on the investigation made certain facts were found to exist, and the man who extends credit upon this basis is protected only to the extent that the relator undertakes to answer in damages if the report was not in material respects true—the risk of the credit upon the guaranteed state of facts rests entirely with the person extending the same. This is no more a contract of insurance that it is a contract of affreightment. It merely gives to the customers of the relator a guaranteed basis of fact; it says, in a given case, John Smith on the 1st day of January, 1914, had $10,000 in a certain bank; he had a stock of goods inventoried at $15,000 on which there was a chattel mortgage for $5,000; he owned a store building of the value of $5,000 on which there was a lien of $2,500, and had bills receivable of $3,000, and bills payable of $2,700. On this basis the merchant determines whether he wants to accept the risk of giving credit, and with this the relator has no relation whatever. If the facts are as stated, the relator has performed his contract and has no further responsibility in the premises; the risk—the insurance of the credit—is either carried by the merchant, or by some corporation having a charter to carry on an insurance business.

The order appealed from should be reversed, and the motion for a peremptory writ should be granted. All concur, except KELLOGG and HOWARD, JJ., who dissent.

Order reversed, with costs, and motion for peremptory writ of mandamus granted, without costs.