In the Matter of the Application of STATIONERS AND PUBLISHERS BOARD OF TRADE, Appellant, for an Order of Mandamus against EDWARD J. FLYNN, as Secretary of State of the State of New York, Respondent.

First Department, May 24, 1929.

*Milo O. Bennett* of counsel [*W. Randolph Montgomery* with him on the brief; *Gregory, Stewart & Montgomery,* attorneys], for the appellant.

*Robert P. Beyer* of counsel [*Amos D. Moscrip* with him on the brief; *Hamilton Ward, Attorney-General*], for the respondent.

MARTIN, J.  By virtue of a proclamation of the Governor duly published under date of April 2, 1924, pursuant to section 24-d of the Stock Corporation Law (as added by Laws of 1922, chap. 353) and section 4 of chapter 787 of the Laws of 1923,* the appellant corporation was declared dissolved, and its charter forfeited, because of its failure to report as required by that statute, upon the theory that it was a stock corporation organized under the laws of the State of New York as the law existed prior to January 1, 1898.

The term of existence of the plaintiff corporation in its certificate of incorporation being due to expire on January 31, 1929, the president and secretary thereof executed a certificate of extension of existence under date of January 28, 1929, and presented it to the Secretary of State for filing.  He refused to file such certificate on the ground that it appeared from the records in his office that there was not any existing corporation of the name Stationers and Publishers Board of Trade, the corporation of that name having been duly dissolved by proclamation of the Governor, pursuant to the statute cited above, as a stock corporation which had neither paid an annual franchise tax after January 1, 1919, nor filed a report of existence.

The plaintiff corporation thereupon applied for an order of mandamus, alleging that it is now and since the 1st day of February, 1879, has been a membership corporation.

The Special Term held that the appellant was from its origin and up to the time of the proclamation of its dissolution, a stock corporation.

The statute under which the plaintiff corporation was organized (Laws of 1877, chap. 228) is in part as follows:

" Section 1. At any time hereafter any twelve or more persons who may desire to form a corporation commonly called board of trade or exchange, for the purpose of fostering trade and commerce, to protect it from unjust or unlawful exactions, to reform abuses in trade, to diffuse accurate and reliable information among its members as to the standing of merchants and other matters, to produce uniformity and certainty in the customs and usages of trade, to settle differences between its members, and to promote

---

* Now Stock Corporation Law, § 107, added by Laws of 1924, chap. 309, as amd. by Laws of 1928, chap. 548.—[REP.

a more enlarged and friendly intercourse between merchants, may make, sign and acknowledge before some officer competent to take the acknowledgment of deeds, and file in the clerk's office of the county where the principal office of such corporation is to be located, and a duplicate thereof in the office of the secretary of state, a certificate in writing in which shall be stated the name of the corporation, and the object for which it shall be formed, the amount of its capital stock, if any, the number of shares of which said stock shall consist, the time of its existence, not to exceed fifty years;   *   *   *."

Section 2, article 1, of the Membership Corporations Law (as amd. by Laws of 1926, chap. 722) provides as follows: " The term ' membership corporation ' means a corporation not organized for pecuniary profit, incorporated under this chapter, or under any law repealed by this chapter."

At the time it was organized, this corporation could not be organized as a membership corporation, except as provided by the Laws of 1877.   The respondent has called attention to the certificate filed at the time of its incorporation.

" The amount of the Capital Stock of said corporation shall be Two Thousand Five Hundred Dollars.

" The number of shares into which the Capital Stock of said corporation shall be divided shall be Two Hundred and Fifty Shares, each of the value of Ten Dollars."

The test, however, is not whether a corporation shall issue shares of stock, but the character of such shares and whether the stockholders are to receive dividends or a share of the profits.

The certificate of stock issued by the corporation is as follows: " This certificate is not transferable and the stock can only be assigned to a member upon the books of the company, in accordance with its By-laws.   In case of the death of a member, the stock shall be offered to the corporation by his Executors or Administrators and shall be purchased by the Corporation at a sum *not* exceeding the par value thereof to wit Ten Dollars ($10)."

By its express terms the certificate of stock could neither be sold nor given away, except as above provided.   It was to be issued to each member as a certificate of membership and ten dollars was to be paid therefor.   When a member died, his estate, under the terms of the certificate, was compelled to sell it to the association for ten dollars or less, but not more.   There could be no profit by reason of such ownership.

The association was not allowed to hold property, other than that necessary to its business.

Section 3 of the General Corporation Law* defines a stock cor-

* Since amended by Laws of 1929, chap. 650.— [Rep.

poration: " A ' stock corporation ' is a corporation having a capital stock divided into shares, and which is authorized by law *to distribute to the holders thereof dividends* or shares of the surplus profits of the corporation."

The fact that a corporation issues certificates of stock does not make it a stock corporation.

" A corporation is not a stock corporation because of having issued certificates called *certificates of stock,* but which are in fact merely certificates of membership, and which is not authorized by law to distribute to its members *any dividends or share of profits* arising from the operations of the corporation." (Gen. Corp. Law, § 3.)

This corporation was not permitted to pay dividends; the members were not entitled to share in any profits made by the corporation; it was not doing business of any kind except that necessary to protect its members and was in all respects similar to any other board of trade.

The certificate of stock is not salable or transferable, except to a member and at the direction of the corporation, and no profits may be derived from membership because irrespective of the value of the share of stock, it must be sold to the corporation for not more than ten dollars. There is nothing whatever in the act of 1877 which gives the holder of a certificate, such as the one before us, any right to a profit or dividends.

When a similar matter was placed before the Attorney-General he wrote an opinion which covered the subject, and said: " I am convinced and accordingly report that a membership corporation, organized under the present statute or under statutes predecessor thereto, cannot for pecuniary gain conduct a collection agency. I believe that such an enterprise is entirely foreign to the purpose of the law authorizing the organization of boards of trade, is not incidental to the proper exercise of powers of such corporations and can only be pursued in corporate form pursuant to the provisions and under the limitations of power prescribed by the Business Corporations Law." (Op. Atty. Gen., vol. 2 [1914], 347, 354.)

In the case of *Meisel* v. *National Jewelers Board of Trade* (90 Misc. 19) it was held that any act on the part of a membership corporation tending to gain a profit was illegal and unauthorized by its charter. It is not contended that the plaintiff corporation has attempted to carry on business for a profit or has done or attempted to do anything in violation of the law.

We have reached the conclusion, therefore, that the Stationers and Publishers Board of Trade is not a stock corporation as that term is used in the General Corporation Law.

The proclamation issued by the Governor had no application thereto. The order granted herein by the court at Special Term should be reversed, with ten dollars costs and disbursements, and the motion for a peremptory mandamus order granted, with ten dollars costs.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion for a peremptory mandamus order granted, with ten dollars costs. Settle order on notice.