BENJAMIN F. BARTLETT and Another, as Executors, etc., of DIANTHA A. BARTLETT, Deceased, Suing on Behalf of Themselves and All Other Stockholders of the LILY DALE ASSEMBLY Similarly Situated, Who Shall Elect to Join in This Action, Plaintiffs, *v.* LILY DALE ASSEMBLY and Others, Individually and as Persons Assuming to Act as Officers or as Trustees of the LILY DALE ASSEMBLY, Defendants.

Supreme Court, Chautauqua County, March 2, 1931.

*Marion H. Fisher,* for the plaintiffs.

*Glenn W. Woodin,* for the defendants.

*William S. Stearns,* for certain stockholders.

HINKLEY, J. Plaintiffs, by their prayer for relief, establish this action solely as one for a declaratory judgment in accordance with section 473 of the Civil Practice Act. This is true, notwithstanding that, under subdivisions 5 and 6 of their prayer for relief, plaintiffs seek further or consequential relief. The broadest concept of the province of a declaratory judgment does not include the request of plaintiffs contained in such subdivisions to declare their *remedies.* Plaintiffs and others similarly situated must seek such remedies as they may be advised, after a determinative declaration of their rights in this representative action.

Defendants have not, by pleading, objection, motion or in their briefs, attacked the plaintiffs' complaint save to move for its dismissal. It follows that the court must determine such issues as are properly presented by the pleadings.

Succinctly stated, this decision must determine and declare whether the Lily Dale Assembly is a stock or a membership corporation; the legality or illegality of certain of its acts; the relative rights, duties and obligations of its stockholders or members, as the case may be, and the corporation, including the present existence or non-existence of such corporation.

"In order to determine the status of a corporation and to ascertain the purposes for which it was incorporated recourse must be had to the act by which it was incorporated or to its charter and the statute under the authority of which it was formed." (*Matter of De Peyster,* 210 N. Y. 216, 219.)

The defendant Lily Dale Assembly was incorporated under the name of "Cassadaga Lake Free Association" in 1879. The latter name was changed in 1903 to the "City of Light Assembly" which, in 1906, was changed to its present name. The certificate of incorporation, dated August 23, 1879, provided that the subscribers thereto "have associated together as a benevolent Charitable Literary and Scientific Society" for the term of fifty years from the date of such certificate. The particular business and object of said society "is to be devoted to benevolent Charitable

literary and Scientific purposes and mutual improvement in religious knowledge." Its operations will be carried on at the Cassadaga Lake Camp Meeting Grounds. The trustees named in such certificate and in accordance therewith numbered seven.

The provisions of such certificate of incorporation, as quoted, determined the character of such association as a membership corporation. Such character was not affected by the insertion in such certificate of incorporation that " the amount of the capital stock of said association is twenty thousand dollars and is divided into two thousand shares of ten dollars each."

This conclusion is certain by a careful study of the statutes in force at the time of the incorporation, August 23, 1879. The original certificate of incorporation indicates that the association was intended to be, and was created, in accordance with the Revised Statutes, sixth edition, 1875, volume 2, page 439, being part I, chapter 18, title VII. These statutes are the authority by which the corporation came into existence. As correctly indicated in the preamble to the later by-laws of the association, these statutes, as revised, were derived in part from chapter 319 of the Laws of 1848.

The provision in the certificate of incorporation for, and the issuance of, so-called shares of capital stock by the corporation were undoubtedly due to the confusion arising by reason of the fact that the revisers included verbatim in the 1875 edition certain statutes which contained inconsistent provisions. These statutes so copied verbatim were chapter 273 of the Laws of 1866, being " An act authorizing the incorporation of associations to erect monuments to perpetuate the memory of soldiers who fell in defense of the Union," and chapter 971 of the Laws of 1867, being " An act for the incorporation of co-operative and industrial unions." Particular attention is called to the use of the words " *under this act*," contained in sections 35, 37 and 38 of the 1875 revision which applied to the entire new act, all of the provisions of the industrial union act of 1867, as copied and not revised. That part of section 5 of chapter 319 of the Laws of 1848 relating to the incorporation of religious societies was omitted from the Revised Statutes of 1875, and the controlling laws of the defendant corporation at the time it was created are the Revised Statutes in existence at that time, and not previous non-existent statutes.

Likewise, attention is called to section 9, title VII, of the Revised Statutes (6th ed. 1875, *supra*) which section gives to corporations formed under that act the same powers contained in title III, chapter 18 of the same act, which latter title presupposes the right to issue stock and gives the right to increase the same.

Shares of stock were provided for in such certificate of incorporation, issued and increased to a total of 6,000 shares of the same par value under the misapprehension that such revision created such powers.

The provision for a capital stock and the issuance and increase of so-called shares of stock did not constitute this corporation a stock corporation. It was created as and has at all times remained, and still is, a membership corporation. The so-called shares of stock were and are certificates of membership. (Gen. Corp. Law [Laws of 1892, chap. 687], § 3, subd. 2, as amd. by Laws of 1895, chap. 672; *Preston* v. *Reinhart*, 109 App. Div. 781; *Leighton* v. *Leighton Lea Association*, 146 id. 255; *Matter of Stationers & Publishers Board of Trade*, 226 id. 496; *Rensselaer Co. A. & H. Society* v. *Weatherwax*, 255 N. Y. 329.)

The latter case is cited as authority for the principles of law last above enumerated in this opinion. Language of the *per curiam* opinion of the Court of Appeals may seem inconsistent with this opinion until attention is called to the fact that the Court of Appeals, in its *per curiam* opinion, refers to a particular type of membership corporation, not this one, and is construing the Membership Corporations Law (Laws of 1909, chap. 40, as amd. by Laws of 1926, chap. 722), in effect October 1, 1926, subsequent to the meeting of this defendant corporation, of August 16, 1926.

Even though it were conceded, which it is not, that chapter 722 of the Laws of 1926 gave power indirectly to a membership corporation to make a by-law creating each certificate of membership or share of stock a unit of voting strength, that statute was not in effect until October 1, 1926. That was subsequent to the meeting of August 16, 1926, where a by-law was legally adopted in accordance with the statutory requirement then in force of one vote for each member providing that " at all meetings of members and at any regularly called special meeting of the same of this Assembly, each member shall be entitled to cast one vote only."

The revisers eventually cleared away all confusion by the enactment of the General Corporation Law of 1892 (Laws of 1892, chap. 687) and by section 2 of the General Corporation Law of 1909 (Laws of 1909, chap. 28). The latter statute classifies all corporations (and such classification must apply from thenceforth to past, present and future corporations) as municipal, public benefit, stock or non-stock corporations, and provides that stock corporations are moneyed, railroad or transportation, business or co-operative corporations; and that non-stock corporations shall be either religious, membership or any corporation other than a stock, municipal or public benefit corporation. Subdivision 2 of section 3

of the General Corporation Law of 1892, as amended by chapter 672 of the Laws of 1895, provides that " A stock corporation is a corporation having a capital stock divided into shares, and which is authorized by law to distribute to the holders thereof dividends or shares of the surplus profits of the corporation. A corporation is not a stock corporation because of having issued certificates called certificates of stock, but which are in fact merely certificates of membership and which is not authorized by law to distribute to its members any dividends or share of profits arising from the operations of the corporation." Practically the same language is adopted in the General Corporation Law of 1909, section 3, subdivision 3, as amended.

The statute under which this corporation was formed forbade it owning real or personal property for any purpose save that of its incorporation and all trustees and directors must act without compensation. This effectively prevented · any persons from acquiring gain in the nature of stock dividends or otherwise by reason of the activities of the corporation. (Laws of 1848, chap. 319, § 2; Laws of 1872, chap. 104, § 1; Revised Statutes [6th ed.] 1875, *supra*, §§ 2 and 20, part I, chap. 18, title VII).

The character of the defendant association being that of a membership corporation, the by-law declaring the unit of voting strength to be measured by each share of stock was void.

The original statutory source of the incorporation of defendant was chapter 319 of the Laws of 1848, and the Revised Statutes in force at the time of its incorporation (6th ed., 1875, *supra*), both providing in substance that the persons who shall have signed and acknowledged such certificate, and their associates and successors, shall in law be capable of making by-laws for the management of its affairs, not inconsistent with the Constitution and laws of this State or of the United States.

Under the common law, " a by-law must not be at variance with the general law of the land." (*People* v. *Medical Society of Erie County*, 24 Barb. 570, at p. 575 [1857].)

Both section 8 of the Membership Corporations Law of 1895 (Laws of 1895, chap. 559) and section 20 of the Membership Corporations Law of 1909 (Laws of 1909, chap. 40, as amd. by Laws of 1926, chap. 722) provide that " the by-laws of any such corporation may make provisions, not inconsistent with law or with its certificate of incorporation, regulating the * * * qualifications of voters * * *."

From the date of its incorporation until the meeting of August 16, 1926, the defendant corporation determined the qualifications of its voters at its meetings by virtue of an alleged by-law.

This by-law, adopted August 30, 1879, provided that " each stock-holder shall be entitled to as many votes as he owns shares of stock and no more." That by-law was not contrary to law at the time of its adoption so far as the statutes disclose. If illegal at its inception, it became a valid by-law by the enactment of section 3 of chapter 172 of the Laws of 1882, which provided that " All the by-laws, rules and regulations heretofore named by said corporation [this defendant], and all elections held thereunder since the said filing of said certificate are hereby ratified and confirmed, and all rights arising therefrom are hereby secured and perpetuated."

However, the Legislature as it attempted to clarify the distinctions between stock and membership corporations, enacted as early as 1892 a general provision that " At every election of directors and meeting of the members of any corporation, every member   *   *   * shall be entitled to one vote if a non-stock corporation." (Gen. Corp. Law [Laws of 1892, chap. 687], § 20.)

This provision remained in effect until 1909 when it was enacted that " at every meeting of a non-stock corporation, every member, unless disqualified by other by-laws, shall be entitled to one vote." (Gen. Corp. Law [Laws of 1909, chap. 28], § 23.*)

Therefore, it follows that the meeting of August 16, 1926, challenged by plaintiffs was conducted in accordance with legal requirement. Its acts and those of subsequent meetings, including the extension of the corporate life of the defendant corporation, were lawful and effective.

From its very inception, the motivating spirit of the defendant corporation was the furtherance of a religious purpose. So inspired, that which began as a camp meeting has become the internationally recognized heart of a distinct religion known as Spiritualism. The growth of Lily Dale is characteristic of the development of any new religion, cult or parish.

Pressing financial needs of development are answered by moneys secured by mortgages, bonds, notes and other securities and evidences of indebtedness if collateral can be pledged. More often the demands of the budget are met by the generosity of devotees and the promotion of collateral undertakings by the sincere believers and willing workers.

Through a legal misconception of its powers, this corporation, to answer its financial needs, sold shares of stock so called, in large quantities and at various times, at a par value of ten dollars. Upon the payment of each ten dollars, a certificate was issued by

---

* Since repealed by Laws of 1929, chap. 650.— [REP.

the corporation under its seal and the hands of its president and secretary. These certificates were in the form of ordinary certificates of ownership of the capital stock of the corporation with the amount specified therein. These certificates neither bore interest nor specified a period of redemption. There was no legally authorized capital stock and, as above indicated, no gain could legally accrue to the holders of such certificates by the payment of dividends. The purchase of these shares of stock amounted to a voluntary subscription, without security, to the furtherance of a religious cause. Repayment by the corporation could not be compelled by the holder of any such certificate. Such certificates could be sold in the open market. The corporation could voluntarily retire them or, in the event of a dissolution, they would ordinarily share *pro rata* in the distribution of the corporate assets.

The rights of the holders of these so-called shares of stock in the corporation were and are identical with the rights of the holders of common stock in a stock corporation, except that the so-called shares of the stock in this corporation bear no dividends, have no inherent voting power and at least one so-called share of stock is essential to membership.

During the lean years of the early struggle of Lily Dale there could be no basis for a fear that its lofty purpose might be lost in its development. But undoubtedly the scenic and health-giving attractions of Cassadaga lake drew others who, perhaps, were less devoted to the furtherance of Spiritualism than the original incorporators. Out of this fear grew the protective requirement that only those persons acceptable to the corporation be admitted to the privilege of membership in the assembly. To eliminate all fear of commercialism as the assets of the corporation increased, the corporation, on August 20, 1923, by unanimous resolution, seconded by one of the plaintiffs herein, adopted a by-law that " no part of the income or accumulated surplus of the Lily Dale Assembly shall inure to the benefit of any private stockholders or individuals, and in case of any dissolution or cessation of activities, any monies over and above that paid by stockholders to the corporation for stock of the corporation, shall be used to promulgate the truths and teachings of Spiritualism."

The corporation at that meeting, at the annual meetings in 1925 and 1926, and at all other times, has recognized its obligation toward all who had aided in the development of the corporation by the purchase of so-called stock. This acknowledgment of money had and received was a thing apart from its other indebtedness. Without detailing its many acts and resolutions, it, at all times, in its

successful exemptions from taxes and otherwise, designated and maintained itself as a religious eleemosynary body

The court has been ever mindful of the fact that the defendant corporation was conceived and born of a religious inspiration sacred to its devotees. The State must recognize that the purpose of the corporation was the furtherance of the religion of Spiritualism, and must permit all who desire to be or become members to remain associated in the furtherance of its teachings.

The court, in compliance with the requirements of its decision as indicated at the outset of this opinion, determines:

1. That the defendant, Lily Dale Assembly, is and at all times was a membership and not a stock corporation.

2. That the acts hereinbefore indicated as legal were, in every sense, proper and lawful.

3. That the relative rights, duties and obligations of the members and the corporation in regard to the certificates of membership, or so-called shares of stock, are as hereinbefore indicated.

4. That the defendant corporation was legally extended.

Judgment may be entered in accordance with this opinion.