Joseph F. G-agliardi, J.
In this CPLR article 78 proceeding petitioners, four individual professional firemen of the Fire Department of the City of Mount Vernon, ¡have commenced a class action for an -accounting and a declaration that the membership requirements promulgated' by respondent, the Firemen’s Benevolent Fund Association of the ¡City of[1] Mount Vernon, unlawfully discriminate against petitioners. In reality petitioners are seeking apportionment of tax moneys received by respondent.
Respondent, is a domestic corporation created in 1894 by special act of the Legislature (L. 1894, ch. 111). Section 6 of the act designated respondent as the recipient of a tax on premiums on fire policies issued by foreign and alien fire insurance companies in the City of Mount Vernon. The tax provisions are now located in sections 553 and 554 of the Insurance Law. The moneys received were to be used for [1] ‘ the care of indigent and disabled firemen and their families ” (L. 1894, ch. Ill, § 6).
Section 1 of /the act constituted respondent a “body corporate ’ ’ with power to adopt a constitution and by-laws and to amend same. Membership was authorized to all persons presently or “hereafter ” engineers of the fire department, members of any fire company located in the city and all residents of the city exempt from jury -service -as provided by local regulation.
*538 On June 9, 1930 respondent filed .with the Secretary of State an amended certificate of incorporation whereby membership was thereafter restricted to 11 volunteer members of the fire department5 ’ and the tax premiums were to be used .“in the care ef indigent and disabled volunteer firemen only and the members of their families Section 1 of article 2 of .respondent’s constitution and by-laws provides that only “volunteer members of the fire department ’ ’ are eligible to membership.
On December 7, 1972 petitioners’ applications for membership were rejected by respondents’ board of trustees on the ground that the applicants were not eligible to membership. Petitioners contend that, under the original charter, any fireman in the ¡.City of Mount Vernon was eligible to membership and respondents’ unilateral act which changed the membership requirements is of no force and effect. No constitutional issues are raised pertaining to the classification of members. Respondent asserts that, under the original charter, petitioners are not eligible to membership and, further, that the amended certificate of incorporation .is in all respects proper, which requires dismissal of the petition.
It is uncontroverted that at present, as in 1894 when respondent was created, the Fire Department of the City of Mount Vernon consists of nine incorporated vounteer fire companies.[1] There are approximately 350 active volunteer firemen in the City of Mount Vernon. In the late 1920’s -the city fathers determined that paid firmen were needed in the Fire Department. The paid firemen drive the fire vehicles to the scene while the volunteer firemen respond directly to the location of the alarm. Approximately 20 former volunteer firemen, now paid firemen, are members in the respondent association. Petitioners never served as volunteer firemen.
The tax provisions in the Insurance Law (§§ 553, 554) have been traced back to an .act promulgated in 1849, and have been upheld by the Court of Appeals (Trustees of Exempt Firemen’s Benevolent Fund of City of N. Y. v. Roome, 93 N. Y. 313). The court there noted that the primary purpose of the State-mandated benevolent fund was to aid volunteer firemen who rendered an important service to the State without receiving monetary *539 recompense (p. 322).[2] Respondent argues that this legislative intent must be read into the original charter. However, it is clear that the insurance tax provisions do not create a preference among the recipients of the moneys (Cary v. City of Oneida, 158 App. Div. 773) and, while respondent remains as the designated recipient, paid firemen may have an interest in the fund if they are eligible to membership (Cary v. City of Oneida, supra; Eisinger v. Stern, 57 Misc 2d 16 ; Niagara Falls Fire Dept. Mut. Aid Assn. v. Exempt Firemen’s Assn. of City of Niagara Falls, 25 A D 2d 484; cf. Exempt Fireman’s Assn. v. City of Little Falls, 148 App. Div. 440).[3] Legislative intent regarding respondent may be ascertained by recourse to the original charter (Matter of De Peyster, 210 N. Y. 216). Nonetheless, while such intent in 1894 might have been to confer benefits upon volunteer firemen only (Ashley Co. v. Fire Dept. of City of Rochester, 73 Misc. 636, affd. 142 App. Div. 929) the broad language used in the charter (L. 1894, ch. Ill, § 1) (“ All such persons as now are, or who hereafter shall be * # * members of any fire * * * company ” are entitled to membership) is not restrictive and respondent’s amendment in 1930 leads to the inescapable conclusion that legislative intent was not clearly manifested (Robia Holding Corp. v. Walker, 257 N. Y. 431).
Accordingly, the issue narrows down to the effect to be accorded the 1930 amended certificate of incorporation. Petitioners contend that the amended certificate is invalid because respondent has amended a .special law by its own private act *540 (cf. 1921 Atty. Gen. 232). Petitioners’ reliance on Abeline v. Firemen’s Benevolent Fund Assn. of Village of Herkimer (55 Misc 2d 406) is misplaced. There the court merely held that the recipient of the funds designated by special law could not .be changed in the absence of another special act of the Legislature. Nevertheless, even that limited ruling pertaining to modification of recipients has been eroded by subsequent determinations which hold that the designated recipient can be changed by validly enacted local laws (Exempt Volunteer Firemen’s Assn, of Lockport v. City of Lockport, 31 A D 2d 311; (Fire Dept. of City of Rochester v. City of Rochester, 23 A D 2d 183, affd. 16 N Y 2d 933). Respondent has remained as the designated recipient since 1894 and it is incumbent upon petitioners to establish that they are entitled to membership.
Pursuant to section 1 of article X of the New York State Constitution the Legislature reserved power to amend corporate charters. The cited provision was enacted to overcome the ruling of the United States Supreme Court in the Dartmouth Coll, case (Trustees of Dartmouth Coll. v. Woodward, 4 Wheat. [17 U. S.] 518), where it was adjudged that a State’s special gpan^ of powers to an .association constitutes a contract within the meaning of the Federal Constitution prohibition against impairing contract obligations (Lord v. Equitable Life Assur. Soc., 194 N. Y. 212; cf. Skaneateles Water Works Co. v. Village of Skaneateles, 161 N. Y. 154). Under the subsequently enacted State constitutional provision it has been definitively decided that the Legislature can amend the law under which a charter is granted 'by special or general law or authorize the corporation to effect changes (Lord v. Equitable Life Assur. Soc., supra; Pennsylvania R. R. Co. v. State of New York, 15 A D 2d 269, affd. 11 N Y 2d 504; Matter of Walker v. Commodity Exch., 251 App. Div. 28, affd. 276 N. Y. 567; Sylvander v. Taber, 19 Misc 2d 1005, affd. 9 A D 2d 1019, affd. 8 N Y 2d 835, app. dsmd. 364 U. S. 629; McNulty v. W. & J. Sloane, 184 Misc. 835; see 11 N. Y. Jur., Corporations, §§ 67-76; 1 Hornstein, Corporate Law and Practice, § 116, § 360 [1959 ed.]).
Regarding the 1930 amended certificate, approval of a Supreme Court Justice of this court was obtained authorizing the modifications and the certificate was accepted for filing by the Secretary of State. At present, as in 1930, the filing of an amendatory certificate of incorporation commences the effective .date of the amendments (Not-For-Profit Corporation Law, § 104, subd. [f]; Business Corporation Law, § 104, subd. *541 [f]; General Corporation Law, § 8, snbd. 2). Approval of a Supreme Court Justice is a mere condition precedent to the right to file the amendment and is not conclusive on either the public or Secretary of State (People ex rel. Blossom v. Nelson, 46 N. Y. 477; Matter of Debs Mem. Radio Fund v. Lomenzo, 50 Misc 2d 51). Such approval, however, indicates that the purpose of the amendment is lawful (cf. Matter of Gay Activists Alliance v. Lomenzo, 31 N Y 2d 965; Matter of Association for Preservation of Freedom of Choice v. Shapiro, 9 N Y 2d 376) and acceptance by the Secretary of State re-enforces this view (cf. Matter of Association for Preservation of Freedom of Choice v. Simon, 22 Misc 2d 1016, affd. 11 A D 2d 927, affd. sub nom. Matter of Association for Preservation of Freedom of Choice v. Shapiro, 9 N Y 2d 376; Matter of New York State Soc. of Professional Engrs. v. Department of State, 174 Misc. 173). Petitioners contend that judicial and administrative approval notwithstanding, respondent was without power to amend its charter. Respondent urges that section 30 of the Membership Corporations Law authorized it to effect the amendment.
The petition alleges, and it is not denied, that respondent is a “ mutual benefit corporation”. Such classification does not exist in the general laws of this State nor is it found in respondent’s charter. At the time of respondent’s creation in 1894 there existed a variety of corporate classifications including membership corporations. Prior to 1894 respondent could have been incorporated as a membership corporation (Exempt Fireman’s Assn. v. City of Little Falls, 148 App. Div. 440, supra; Ashley Co. v. Fire Dept. of City of Rochester, 73 Misc. 636, affd. 142 App. Div. 929, supra) and subsequent to the passage of the first Membership Corporations Law in 1895 (L. 1895, ch. 559) until enactment of the Not-For-Profit Corporation Law in 1969 (L. 1969; chs. 1066,1067) an association such as respondent could have been organized expressly as a membership corporation (Amsterdam Permanent Firemen’s Assn. v. City of Amsterdam, 40 Misc 2d 323; Watertown Firemen’s Benevolent Assn. v. City of Watertown, 134 N. Y. S. 2d 465; Historical Note to General Corporation Law, § 8, McKinney’s Cons. Laws of N. Y., Book 22, General Corporation Law, § 8, p. 27). Indeed, after September 1, 1970 when the Not-For-Profit Corporation Law became effective, such an association could be incorporated ¡as a type B corporation (Not-For-Profit Corporation Law, § 1402, subd. [b]) in lieu of the classifications formerly set forth in the repealed provisions of the General *542 Corporation and Membership Corporations Laws (see, e.g., L. 1973, chs. 827, 949, 980, 984).
Section 2 of the Membership Corporations Law of .1895 as amended (L. 1895, ch. 559, amd. L. 1909, ch. 40, amd. L. 1926, eh. 722) provided that a corporation created by special law and not otherwise permitted under the Membership Corporations Law is not a membership corporation (see Bailey v. American Soc Prevention of Cruelty to Animals, 282 App. Div. 502, 504, affd. 307 N. Y. 679; Matter of Owens, 79 App. Div. 236). The fact that certain town fire corporations were legalized and other fire corporations created under general law made subject to the statute’s provisions .(Membership Corporations Law, art. 10) did not make respondent a membership corporation, since it was created by special law. Nevertheless, the law does mot favor sui generis corporations (Matter of Grace v. Grace Inst., 19 N Y 2d 307) and requires classification where feasible (Matter of Watson, 171 N. Y. 256). Under the amended version of the General Corporation Law of 1892 (L. 1892, ch. 687, § 2, amd. [and carried forward in substance] L. 1929, ch. 650, § 2) all corporations were classified as municipal, stock, nonstock and mixed. Mixed corporations were expressly enumerated by type and did not include respondent. In 1894 the only category under which respondent could possibly be classified was nonstock. A nonstock corporation was defined as religious or membership. Obviously respondent does not fit the first subclassification and, since it was organized as a nonprofit entity for benevolent purposes, it must of necessity be treated as a membership corporation (Matter of Stationers & Publishers Bd. of Trade v. Flynn, 226 App. Div. 496; Matter of Lampson, 33 App. .Div. 49, affd. 161 N. Y. 511; Bartlett v. Lily Dale Assembly, 139 Misc. 338) which seemingly was the intent of the Legislature when it constituted the membership as a body corporate ,(see Ashley Co. v. Fire Dept. of City of Rochester, 73 Misc. 636, affd. 142 App. Div. 929, supra). This does not mean that respondent, having been created prior to the enactment of the Membership Corporations Law, is subject to all the provisions of that statute; rather, .all 'pertinent laws pertaining to a body corporate having its attributes must be considered,(Matter of Lampson, 33 App. Div. 49, 55, supra).
It is to be noted that both the Not-For-Profit Corporation Law and the Business Corporation Law (L. 1961, ch. 855) authorize a corporation created by special act to amend its certificate to change its corporate purposes (§§ 801, subd. [c] of both laws). In other words, respondent could legally *543 accomplish today what it attempted to do in 1930. Indeed, organizations such as respondent are still being created by the Legislature and membership in these organizations is limited to volunteer and exempt firemen (see L. 1973, chs. 827, 980, 984). No good reason exists to deny respondent the right to amend its charter as broadly as presently authorized and an argument may be made that the recent statutory developments implicitly ratify the 1930 action (Matter of Creditor’s Audit & Adj. Assn., 72 Misc. ,461). Nevertheless, the court concludes that respondent by virtue of section 2 of the General Corporation Law as it existed before and after respondent’s creation was and is a membership corporation.
Prior to 1926, membership corporations could amend their certificates of incorporation under general laws authorizing such amendments and if properly accomplished the amended certificate could change ,the corporate object and purpose (Matter of Creditor’s Audit & Adj. Assn., 72 Misc. 461, supra; L. 1923, ch. 787, § 35 [Stock Corporation Law]; L. 1909, ch. 40, § 4, § 14, § 15 [Membership Corporations Law]; L. 1909, ch. 28, § 7 [General Corporation Law]; L. 1890, ch. 425 [benevolent corporations]). In 1926 the Membership Corporations Law was revised (L. 1926, ch. 722) and section 30 thereof provided in pertinent part:
“ A membership corporation created under or by a general or special law may effect one or more of the following changes:
“A. To extend, limit or otherwise change its purposes and powers or other provisions of its certificate of incorporation;
‘ ‘ Provided * * * (c) that no corporation organized by or under a special law shall change the general character of its business as authorized by such special law * * * (e) that if the corporate purposes are to be changed, the approval of a justice of the supreme court * * * shall be endorsed on or annexed to the certificate.”
As noted earlier, the substance of this provision has been carried forward into present day corporate legislation. It is clear and not disputed that respondent fully complied with the procedure set forth in section 30 of the former Membership Corporations Law. While the change in membership requirements did not substantially alter the character of respondent’s organization (Hollender v. Rochester Food Prods. Corp., 242 N. Y. 490; People ex rel. Daily Credit Serv. Corp. v. May, 162 App. Div. 215; Clarke v. American Press Assn., 145 Misc. 370), nor affect vested rights (11N. Y. Jur., Corporations, § 71), it cannot be gainsaid that such modification was fundamental *544 (Croughan v. New York Mut. Benevolent Soc., 179 App. Div. 211). Yet, the change was for a lawful purpose, as was recognized by the Justice who approved the certificate, and associations created for volunteer firemen only were legal in 1930 and remain so today. Respondent is not unlawfully discriminating against petitioners individually or as a class (cf. Not-For-Profit Corporation Law, § 1402, subd. [i]). Volunteer firemen perform vital services in this State without salary and the Legislature has seen fit to reward the volunteers in respondent’s organization by making them the beneficiaries of insurance tax moneys. This was accomplished by first organizing the respondent and later giving it (in 1926) the power to amend its charter. “ In New York a special charter may be amended by a general act which does not refer specifically to such charter ” (New York Cent. & Hudson Riv. R. R. Co. v. Williams, 199 N. Y. 108, 119, affd. sub nom. Erie R. R. Co. v. Williams 233 U. S. 685). The amended certificate is clear on its face, was authorized by the Laws of 1926, and is valid. “ (T)hese. volunteer firemen ought not now to be lightly deprived of moneys established for their care in time of need and, in a sense, as an inducement for their gratuitous services, [not] without clear and specific enactment to that end” (Ashley Co. v. Fire Dept. of City of Rochester, 73 Misc. 636, 639, affd. 142 App. Div. 929). Accordingly, respondent properly denied petitioners’ applications for membership. The petition is dismissed.

. In Westchester County there presently exist 59 fire districts virtually all of which are manned by a combination of paid and volunteer firemen.

. Recent statistics reveal that volunteer firemen respond to two-thirds of the approximately two million fires reported annually in the United States. There are approximately 750,000 volunteers in the nation, which is eight times the number of paid firemen (Masters, Pictorial History of Fire Fighting 90 [1967 rev. ed.]). New York State has statutorily recognized the unique service rendered by volunteer firemen (Volunteer Firemen’s Benefit Law, § 2) and affords them accident coverage. Additionally, volunteer firemen receive some civil service protection (Civil Service Law, § 75) and the real property used by fire corporations for public purposes is exempt from State property taxation (Real Property Tax Law, ■§ 464; see § 466, ;§ 468).

. Although it has been said that the courts are powerless to direct membership corporations or voluntary associations to accept applicants (Simons v. Berry, 210 App. Div. 90; Matter of Barazani v. Brighton and Manhattan Beach Chamber of Commerce, 20 Misc 2d 844; see Matter of Weidenfeld v. Keppler, 84 App. Div. 235, affd. 176 N. Y. 562; cf. Not-For-Profit Corporation Law, § 1402, subd. [i]), it is claimed here that respondent was created to encompass all classes of firemen and denial of membership works an irreparable injury. These allegations state a cause of action (Simons v. Berry, 240 N. Y. 463).