Honorable James P. Corcoran Superintendent Insurance Department
Your counsel has asked whether a title abstract corporation is engaging in the title insurance business where its title reports contain provisions "guaranteeing" or "certifying" the subscriber against all loss not in excess of a specified amount by reason of the corporation's failure to report any recorded lien or encumbrance for which a search has been made and offering to increase that amount upon payment of an additional "fee".
Insurance Law, § 40 prohibits the doing of an insurance business in the State unless authorized by a license issued by the Superintendent of Insurance. Section 41(3) of the Insurance Law provides that any of the following acts constitute "doing an insurance business":
 "(b) the making, as warrantor, guarantor or surety, or the proposing to make as warrantor, guarantor or surety, of any contract of warranty, guaranty or suretyship as a vocation and not as merely incidental to any other legitimate business or activity of the warrantor, guarantor or surety * * * (d) the doing of any kind of business * * * specifically recognized as constituting the doing of an insurance business within the meaning of this chapter; (e) the doing or proposing to do any business in substance equivalent to any of the foregoing in a manner designed to evade the provisions of this chapter." (Emphasis supplied.)
Under Insurance Law, § 41(3)(d), the doing of "any kind of business * * * specifically recognized as constituting the doing of an insurance business" under that statute, constitutes "doing an insurance business". Insuring and guaranteeing the correctness of title searches is a form of title insurance and is specifically recognized under the Insurance Law as constituting the doing of an insurance business (Insurance Law, §§ 46[18], 432[1]). Any person or firm engaged in the business of guaranteeing the correctness of title searches is, therefore, "doing an insurance business" and subject to the licensing requirements of the Insurance Law (id., §§ 40, 41[3][d], 46[18], 432[1]).
Based upon a review of the provisions of the abstract report in question, we are led to the conclusion that an abstract company which makes or issues reports of this nature is engaging in the business of guaranteeing the correctness of its title searches and, therefore, is doing an insurance business under Insurance Law, § 41(3)(d) (id., §§ 41[3][d], 46[18], 432[1]). An abstract report containing such provisions is essentially a contract of guaranty under which the abstract company is guaranteeing the accuracy of its reports and limiting its common law liability for negligence and misconduct in the examination of a title. See, People ex rel. Daily Credit Service Corp. v May, 162 App. Div. 215 (3d Dept, 1914), affd 212 N.Y. 561 (1914); Ehmer v Title Guarantee Trust Co., 156 N.Y. 10 (1898). The Legislature has specifically reserved the business of guaranteeing title searches to those organizations which are qualified as "title insurance corporations" under Article 13 of the Insurance Law (Insurance Law, §§ 432[1], 439[1]), and has also provided that the making or issuance of a title abstract "without guarantee or insurance thereof" does not constitute the business of insurance (id., § 439[1]). This legislative determination underscores the essential difference between a title search and title insurance. The former is a historical report of the title to real property, whereas the latter provides a financial guarantee backing such report (Warren's Weed, New York Real Property, § 1.02 at 4 [4th ed., 1982]; Smirlock Realty v Title Guarantee Company, 70 A.D.2d 455 [2d Dept, 1979]). In our view, an abstract company goes beyond its purely reporting function and in effect becomes an insurer where it provides financial guarantees backing its title searches. The imposition of an additional "fee" based upon the company's fee schedule for the purpose of increasing the company's liability is a further indication that the transaction essentially constitutes insurance and poses the very dangers of excessive rates and fiscal irresponsibility which the Insurance Law was designed to obviate. See, Matter of Feinstein, 36 N.Y.2d 199 (1975).
We also note that an abstract company which makes or issues contracts of guaranty such as these could be deemed to be doing an insurance business under Insurance Law, § 41(3)(b) if a factual determination is made that the company issues such guarantees "as a vocation and not as merely incidental to any other legitimate business activity" (Insurance Law, § 41[2], [3][b]; Electronic Realty Associates, Inc. vLennon, 94 Misc.2d 249 [Sup Ct, Dutchess Co, 1978]; 1979 Op Atty Gen 51). The test adopted in Lennon to determine whether a guarantor is doing an insurance business in New York is whether the guarantor spends "a major portion" of its time on offering guarantees (1979 Op Atty Gen 51, 53).
We conclude that a title abstract company is engaged in the insurance business where its title reports contain provisions "guaranteeing" or "certifying" the subscriber against all loss not in excess of a specified amount by reason of the corporation's failure to report any recorded lien or encumbrance and offering to increase that amount upon payment of an additional fee. In concluding that the activities in question constitute the doing of an insurance business, we also note Insurance Law, § 41(3)(e), which prohibits the doing of business in a manner designed to evade the provisions of the statute. We have previously interpreted that provision as requiring "searching examination into borderline cases to the end that the basic scheme of public regulation of insurance may be carried out" (1957 Op Atty Gen 234). While we have no occasion to consider whether abstract companies which include guarantees in their reports are attempting to avoid the licensing requirements of the statute, we do believe that such activity warrants a strict standard of review in view of the provisions of section 41(3)(e).