In the Matter of MOUNT SINAI HOSPITAL.
JULIUS GOLDMAN et al., Appellants; JACOB EMSHEIMER et al., Respondents.

(Argued November 28, 1928; decided December 31, 1928.)

*Walter H. Pollak* and *Carl S. Stern* for appellants. The statute of 1925 destroys the voting rights of members, for which consideration had on the faith of law existing at the time and of the hospital's own constitution been given by the members; the statute, therefore, impairs the obligation of contracts. (*Commonwealth* v. *Essex Co.*, 13 Gray, 239; *People* v. *O'Brien*, 111 N. Y. 1; *Superior Water Co.* v. *Superior*, 263 U. S. 125; *Manheim Borough* v. *Manheim Water Co.*, 229 Penn. St. 177; *Holyoke Co.* v. *Lyman*, 15 Wall. 500; *Printing House* v. *Trustees*, 104 U. S. 711; *Bryan* v. *Board of Education*, 151 U. S. 639; *George* v. *Holstein-Friesian Association*, 238 N. Y. 513; *Allen* v. *McKean*, 1 Sumn. 277; *Sage* v. *Dillard*, 15 B. Mon. 340.) The statute by completely making

over the structure of the corporation and taking from the members their right to control its property and policies through electing the trustees, deprives them of property without due process of law. (*Lord* v. *Equitable Life Assurance Society*, 194 N. Y. 212; *Page* v. *American, etc., Mfg. Co.*, 129 App. Div. 346; *Bond* v. *Atlantic Terra Cotta Co.*, 137 App. Div. 671; 151 App. Div. 938; 210 N. Y. 587; *Matter of Jamaica Consumers Ice Co.*, 190 App. Div. 739; 229 N. Y. 516; *Dartmouth College* v. *Woodward*, 4 Wheat. 699; *White* v. *Brownell*, 2 Daly, 329; *People* v. *Medical Society*, 24 Barb. 570; *Commonwealth* v. *Guardians of the Poor*, 6 S. & R. 469; *Fuller* v. *Trustees Plainfield School*, 6 Conn. 532; *Associate Alumni* v. *Theological Seminary*, 163 N. Y. 417; *Trustees of Presbytry* v. *Westminster Church*, 222 N. Y. 305.) The special act which deprives the members of Mount Sinai Hospital, and of that corporation alone, of rights which the general laws of the State established and which the members of all other membership corporations incorporated under those laws retain, is a denial of the equal protection of the laws and a deprivation of the members' rights otherwise than by the law of the land. (*Yick Wo* v. *Hopkins*, 118 U. S. 369; *Nixon* v. *Herndon*, 273 U. S. 536; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *Gulf Railway Co.* v. *Ellis*, 165 U. S. 150; *Detroit Ry. Co.* v. *Fuller*, 205 Fed. Rep. 86; *Southern Bell Telephone Co.* v. *Calhoun*, 287 Fed. Rep. 381; *McFarland* v. *American Sugar Refining Co.*, 241 U. S. 86; *Stearns* v. *Minnesota*, 179 U. S. 223.)

*Charles E. Hughes, Garrard Glenn, Benjamin Tuska* and *Henry F. Wolff* for respondents. The charter amendment was the means chosen by the Legislature acting within its constitutional sphere, for the solution of a serious problem which new conditions had created in the operations of a public charity. The method adopted was in accord with both precedent and modern practice, and

constituted no radical alteration in the charter scheme. (*People ex rel. Bryant* v. *Zimmerman*, 241 N. Y. 405; *Matter of Morse*, 247 N. Y. 290; *Middleton* v. *Texas Power & Light Co.*, 249 U. S. 152; *Calder* v. *Michigan*, 218 U. S. 591; *Polk* v. *Mutual Reserve*, 207 U. S. 310; *Ark. Valley Co.* v. *Lyon Canal Co.*, 173 Fed. Rep. 601; *Brewster* v. *Hartley*, 37 Cal. 15; *Cabana* v. *Holstein-Friesian Assn.*; 196 App. Div. 842; 233 N. Y. 644; *George* v. *Holstein-Friesian Assn.*, 238 N. Y. 513; *Ayers* v. *Order of United Workmen*, 188 N. Y. 280; *Wright* v. *Knights of Maccabees*, 196 N. Y. 391.) The State's reserved power to amend or repeal the corporate charter peculiarly applies to changes in the manner of electing the directors of a corporation like Mount Sinai. (*Pratt Institute* v. *City of N. Y.*, 183 N. Y. 151; *Polk* v. *Mutual Reserve Fund*, 207 U. S. 310; *Lord* v. *Equitable Trust Co.*, 194 N. Y. 212; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Miller* v. *State*, 15 Wall. 478; *Looker* v. *Maynard*, 179 U. S. 46; 21 Sup. Ct. 21; *McKee* v. *Chautauqua Assembly*, 124 Fed. Rep. 808; 130 Fed. Rep. 536; *Jackson* v. *Walsh*, 75 Md. 304; *Grobe* v. *Erie Mutual Ins. Co.*, 39 App. Div. 183; 169 N. Y. 613.) There has been no invasion of rights in which either the corporation, or the public as represented by the State, are interested. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Sage* v. *Dillard*, 15 B. Mon. 340; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *Southern Tel. Co.* v. *Calhoun*, 287 Fed. Rep. 381; *McFarland* v. *Am. Sugar Co.*, 241 U. S. 79; *People* v. *Beakes Dairy Co.*, 222 N. Y. 432; *Matter of Morse*, 247 N. Y. 290.) The members' privilege of voting for the election of trustees of a charitable corporation does not constitute a " contract right " within the meaning of any constitutional restriction on the exercise by the Legislature of its reserved right to alter, amend or repeal the charter. (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462; *Matter of MacDowell*, 217 N. Y. 454; *Polk* v. *Mutual Reserve Assn.*, 207 U. S. 310; *Bryan* v. *Board of Education*,

151 U. S. 639.) The appellants had no property interest of any description in or with respect to the Mount Sinai Hospital. (*Matter of Morse*, 247 N. Y. 290; *Grobe* v. *Ins. Co.*, 39 App. Div. 183; 169 N. Y. 613; *Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462; *Avila* v. *City of New York*, 106 App. Div. 120; *Mormon Church* v. *U. S.*, 136 U. S. 1; *Stanley* v. *Colt*, 5 Wall. 119.)

POUND, J. Mount Sinai Hospital is a charitable corporation. It was incorporated in the year 1852 under the name of " The Jews Hospital in New York," under a general act (L. 1848, ch. 319) entitled: "An Act for the incorporation of benevolent, charitable, scientific and missionary societies." The affairs of such a corporation are, under such act, controlled and managed by a board or trustees or directors. The purpose of the incorporation, as stated in the certificate, was: " medical and surgical aid to persons of the Jewish persuasion and for all other purposes appertaining to Hospitals and Dispensaries." Its name was changed by a special act of the Legislature (L. 1866, ch. 627) to " The Mount Sinai Hospital." The act of 1848 provided: " the society so incorporated may annually elect from its members its trustees, directors or managers, at such time and place, and in such manner as may be specified in its by-laws."

By Laws of 1857, ch. 651, entitled: " An Act to amend the constitution of the Jews' Hospital, in New York," a special act, it was provided: " the business of the Jews' hospital, in New York, shall be managed by twelve directors, and the said directors, shall be so classified that one-fourth part of the whole number thereof, shall be *annually elected by the members of the society*." In 1922 the number of the board was increased to forty-two, divided into seven classes of six each, six being elected each year for the term of seven years. Many other special acts amending the charter of the Mount Sinai Hospital have been enacted. Two only will be referred to. Laws of 1918,

chapter 80, changed the style of "directors" to "trustees."
Laws of 1904, chapter 365, provides:

"Section 1. The purposes and objects of the Mount
Sinai hospital of the city of New York are hereby declared
to be 'the support and maintenance of an institution to
be known as the Mount Sinai hospital, for the purpose
of affording dispensary service and medical and surgical
aid and nursing sick and disabled poor of the city of
New York and others *of any race, creed or nationality,'*
and its certificate of incorporation is hereby amended
accordingly."

Thereby the non-sectarian character of the charitable
activities of the hospital was established.

By Laws of 1917, chapter 269, the "Federation for the
support of Jewish Philanthrophic Societies of New York
City," was incorporated, and by Laws of 1917, chapter
498, charitable corporations were authorized to affiliate
with Federation. Mount Sinai became affiliated with
Federation.

Federation is a central collecting agency for Jewish
societies. By its by-laws no affiliated institution may
solicit funds except permanent endowments and legacies.
Mount Sinai submits to Federation its annual budget.
Members of beneficiary societies may designate in con-
tributing to Federation the particular societies to which
their contributions may be applied. The purpose is to
enable all members of Jewish charitable societies to pay
Federation rather than to keep up individual memberships.

The corporation is one of the greater charities of the
city of New York. It has a membership numbering
about four thousand and from small beginnings has
accumulated property of the estimated value of from
$12,000,000 to $15,000,000.

Laws of 1925, chapter 17, provides:

( "The various classes of the board of trustees of the
Mount Sinai Hospital, as now constituted, shall continue
in office until the expiration of their respective terms, and

the successors of said respective classes shall be elected
*by a majority vote of the remaining members of the board
of trustees* annually upon the expiration of the terms of
said respective classes."

The election of the members of the board in the year
1925 was held under the provisions of this act. The
constitutionality of the statute is challenged in this pro-
ceeding, not by the corporation, but by two members of
the society, paying annual dues, one as a $10 member
and the other as a donor or $25 member. Membership
consists of " those persons who have enrolled their
names " in one of several classes of members, the classi-
fication being dependent on the amount received. It is
also provided that a member in arrears for one year may
be dropped. The only question is whether the act
violates any of the appellants' constitutional rights to
have their contracts unimpaired and their property and
liberty uninterfered with, except by due process of law,
and to the protection of equal laws.

The change is not arbitrary or unreasonable. A board
of trustees once elected by the members of the corporation
becomes self-perpetuating. The purpose of the enact-
ment may be regarded as two-fold: *First,* to meet the
situation of a possible falling membership, and *secondly,*
to make certain the self-perpetuating control of the
society by the board as against the possible dangers of
popular elections. Such a change must be upheld unless,
under the circumstances, it violates fundamental principles
of justice, inconsistently with constitutional limitations
on the legislative power.

The certificate of incorporation is subject to alteration
by the Legislature. Not only did the Constitution of New
York of 1846, in force when the hospital was incor-
porated, provide, as does the present Constitution
(Art. VIII, § 1): " All general laws and special acts
passed pursuant to this section may be altered from time
to time or repealed," but the act of 1848 (§ 10) also con-

tained a provision: "The legislature may at any time amend, annul or repeal any incorporation formed or created under this act." This reservation is a part of the charter (*Pratt, Inc.,* v. *City of New York,* 183 N. Y. 151, 162.) Furthermore, the Legislature may, when in its judgment the objects of the corporation cannot be attained under general laws, create corporations by special act. (Art. VIII, § 1.) Thus we have the Mount Sinai Hospital with a charter consisting of its certificate of incorporation as amended by special acts. We have such special acts accepted by the corporation. We have the act of 1925, challenged as unconstitutional by two members who assert that the board of trustees may not accept the amendment without their consent. They rest on the proposition that, so long as they choose to remain members of the corporation, the Legislature may not, under the reserved power to amend the corporate charter, without their consent, deprive them of their right to vote for trustees.

The reserved power to amend corporate charters prevents the charter from becoming a contract between State and corporation protected from impairment by the Constitution. (*Dartmouth College Case,* 4 Wheat. [U. S.] 518.) Under it anything may be done by the Legislature that could be done if the Federal Constitution did not prohibit a State from passing a law impairing the obligation of contracts. (U. S. Const. art. 1, § 10.) Any alteration may be made "which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the legislature may deem necessary to secure either that object or any public right" or "to promote due administration of the affairs of the corporation." (*Tomlinson* v. *Jessup,* 15 Wall. [U. S.] 454; *Holyoke Co.* v. *Lyman,* 15 Wall. [U. S.] 500, 519; *Miller* v. *State,* 15 Wall. [U. S.] 478, 498; *Close* v. *Glenwood Cemetery,* 107 U. S. 466, 476.) A State may not, by using the form of charter amendment, deprive a corporation of

any of its substantial property or property rights, except in the legitimate exercise of the legislative or police power, under the due process and equal protection clauses of the State and Federal Constitutions. (*Zabriskie* v. *Hackensack, etc., R. R. Co.*, 18 N. J. Eq. 178, 192; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416.) In other words, a corporate charter is no longer a contract between the corporation and the State which the State may not alter without the consent of the corporation; but the corporation and its members are not subject to any kind of confiscatory legislation or discriminatory burden which takes the guise of an amendment to the charter. " The alterations [under the reserved power] must be reasonable;  *  *  * and be consistent with the scope and object of the act of incorporation." (*Shields* v. *Ohio*, 95 U. S. 319, 324; *Commonwealth* v. *Essex Co.*, 13 Gray [Mass.], 239, 253; *People* v. *O'Brien*, 111 N. Y. 1, 52; *Chicago Mil. & St. P. R. R. Co.* v. *Wisconsin*, 238 U. S. 491, 501.) Tested by this rule, the amendment is unobjectionable on constitutional grounds and is a proper exercise of the reserved power to alter charters, wholly independent of the exercise of the police power of the State. (Cf. *Erie R. R. Co.* v. *Williams*, 233 U. S. 685, 700.)

The grant of a special charter to a corporation does not deny to it or to other corporations " the equal protection of the laws." (U. S. Const. 14th Amendment, § 1.) A corporate charter creates a legal entity, distinct from its members and from other corporations. The trustees of one charitable or educational corporation may be elected by the members; of another by the board itself; of a third by coöptation. (Education Law [Cons. Laws, ch. 16], § 1031.) One corporation may have many and great powers; another few and small powers. They differ as individuals differ. The effort to require incorporation under general laws has proved both half-hearted and ineffective. The monition contained in the New York Constitution that " corporations may be formed under general laws "

has been heeded by the Legislature only so far as it has been deemed expedient by the Legislature itself to do so and the determination of the Legislature is controlling on the courts. (*People* v. *Bowen,* 21 N. Y. 517; *Economic P. & C. Co.* v. *City of Buffalo,* 195 N. Y. 286, 299.) The act of 1925, even though the corporation sought to reject it, as it does not, is not discriminatory legislation placing an unequal burden on the Mount Sinai Hospital or on its members. It is not a penal statute, such as was unsuccessfully challenged by a member of the Ku Klux Klan in *People ex rel. Bryant* v. *Zimmerman* (241 N. Y. 405; 278 U. S. 63), nor is it a statute which intentionally and arbitrarily discriminates against the corporation or its members. It is a governmental regulation of the method of electing trustees as to which no rule of uniformity exists and which is a common regulation of charitable corporate charters. If the Legislature, in its wisdom, deems it necessary or appropriate, on grounds of public policy, to enact such a statute to carry into execution its power over the conduct of the business of its creature, the equal protection of the laws is not thereby withheld.

The corporation itself has been deprived of no property " without due process of law " (U. S. Const. 14th Amendment, § 1), for the provision that the trustees should be elected by its members, although a contractual right between State and corporation, subject to amendment under the reserved power, is not a property right of the corporation of which it could not be deprived without its consent. It has, moreover, sought the change in the law for its benefits and accepted and acted on it; so that the test is not what are its rights in this regard but what are the rights of the appellants as members of the corporation? If their privilege to vote for trustees presents any evidence of ownership or vested right to share in the control of the corporation such as we associate with the idea of property, it may be beyond the power of the

Legislature to take it from them. (*Lord* v. *Equitable Life Assur. Soc.*, 194 N. Y. 212.) They had the bare right to vote for trustees because they were mere members of the corporation paying an annual membership fee. When they became members of the corporation they consented in advance to everything that could be done by legislative amendment to the charter which did not deprive them of their constitutional rights. (*McKee* v. *Chautauqua Assembly*, 124 Fed. Rep. 808; 130 Fed. Rep. 536.) They took the risk of a true amendment.

A member's right to a voice in the management of a corporation may under conditions not presented here be a vested interest entitled to protection under the Constitution. What vested interest does a mere voting member of a charitable corporation devoted in part, at least, to public uses, have to protect of which he is deprived when he is deprived of his right to vote? Not, as in the case of the stockholders of a business corporation, property interests of his own (*Lord* v. *Equitable Life Assur. Soc.*, *supra;* *Davis* v. *Louisville G. & E. Co.*, 142 Atl. Rep. 654; 14 Cornell Law Quarterly, 85), because he has no interest in the property of the corporation. If the corporation were dissolved, the funds would not be awarded to the individual members. (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462.) The members do not invest their money. They give it to charity. Not the right of a founder, or one who contributes money under express conditions, to have the statutes of his foundation as to the powers of trustees, or the terms of his conditions, strictly adhered to, except so far as he consents to their alteration. (*Allen* v. *McKeen*, 1 Sumner, 276; *Printing House* v. *Trustees*, 104 U. S. 711.) Appellants are not founders nor did they attach any express conditions to the payment of their membership dues. Appellants are not asserting the right of the corporation to prevent the transfer of the corporate property from one board of trustees to another

by the creation of a new corporation under a new charter (*Ohio* v. *Neff*, 52 Ohio St. 375; *Sage* v. *Dillard*, 15 B. Mon. [Ky.] 340, 360; *Regents, etc.*, v. *Williams*, 9 G. & J. [Md.] 365) for no such transfer is attempted. The corporation continues to elect its own trustees. Nor are they asserting the right of the corporation to prevent diversion of the funds raised for the corporation (*Bryan* v. *Board of Education*, 151 U. S. 639, 653); the corporation and its purposes remain intact. The voting power was exercised by the members for the benefit of the corporation. Appellants have no beneficial interest of their own to protect (*Matter of Morse*, 247 N. Y. 290, 303, 304); no " definite right secured to him [them] by a contract with the corporation." (*Grobe* v. *Erie Co. Mut. Ins. Co.*, 39 App. Div. 183, 186; affd., 169 N. Y. 613; *Polk* v. *Mutual Reserve Fund*, 207 U. S. 310, 325, 328.)

Under the reserved power of amendment, when in the judgment of the Legislature the interests of a charitable corporation will be promoted by a change in the method of electing trustees, once intrusted to the members, whereby the members are disfranchised and the board is made self perpetuating, no one's property is taken; no one is deprived of his liberty, except by the rightful exercise of the reserved power. (*People ex rel. Bryant* v. *Zimmerman, supra*, at p. 72.) Methods of administration are regulated (*Lord* v. *Equitable Life Assurance Soc., supra; Sinking-Fund Cases*, 99 U. S. 700, 719, 720), and properly regulated.

As was pointedly said in *Looker* v. *Maynard* (179 U. S. 46, 54): " Remembering that the *Dartmouth College* case, (which was the cause of the general introduction into the legislation of the several States of a provision reserving the power to alter, amend or repeal acts of incorporation,) concerned the right of a Legislature to make a change in the number and mode of appointment of the trustees or managers of a corporation, we cannot assent to the theory that an express reservation of the general power

does not secure to the Legislature the right to exercise it in this respect."

The appellants' case has been presented to the court from many different angles, none of which has been overlooked. The court has carefully considered all their points. It has reached the conclusion that the right of a member of a charitable corporation to participate in the control of the corporation by voting for trustees, must, under the reserved power, yield to the greater right of the State and the corporation to provide for the more efficient administration of the affairs of the corporation, as their judgment dictates.

It would be contrary to all correct ideas of the reserved power to say that one who once becomes, by the payment of annual dues, a voting member of a charitable corporation of four thousand members, becomes also a party to a perpetual contract that he shall not be divested of his voting rights without his consent so that he may insist on retaining his membership to bar the adoption of a detail of administration, such as the method of electing trustees, which is deemed salutary by the Legislature and the corporation. Such is the substance of appellants' claim. We find no authority which compels such a conclusion.

If appellants are not satisfied with the amendment, they have an ample remedy in the right to refrain from paying membership dues in the future.

The order should be affirmed, with costs.

CRANE, ANDREWS, KELLOGG and O'BRIEN, JJ., concur; CARDOZO, Ch. J., and LEHMAN, J., not sitting.

Order affirmed.