EDYTHE C. BAILEY et al., Individually and as Members of American Society for the Prevention of Cruelty to Animals, Respondents, *v.* AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, Appellant.

First Department, October 27, 1953.

*John C. Crawley* of counsel (*Howard B. Nichols* with him on the brief; *Thacher, Proffitt, Prizer & Crawley*, attorneys), for appellant.

*David M. Engelson* for respondents.

CALLAHAN, J.  Defendant, Society, appeals from an order denying defendant's motion to dismiss the complaint for insufficiency and for summary judgment in defendant's favor. Twenty members, a small minority of defendant Society, sue the Society for a judgment declaring certain by-laws of the Society void and for a judicial determination of the rights of the parties.

The Society was organized in 1866 by a special act of the Legislature (L. 1866, ch. 469) for a nonprofit and humane purpose.  Plaintiffs are among those who pay dues as patrons or members of various classes.  Certain functions of a public nature in the way of enforcement of laws against cruelty to animals and licensing of animals have been delegated to the Society.

The act of incorporation gave the Society the right to adopt a code of by-laws not inconsistent with the laws of the State or the United States, which code until modified or rescinded was to be as binding on the Society, its officers and members as the act itself.  Pursuant to this power defendant did adopt by-laws from time to time.  It is largely with relation to by-laws adopted in 1900 and 1907 that plaintiffs complain, contending, *inter alia*, that there has been an unlawful usurpation of power by the board of managers of the Society in various respects to the injury and deprivation of plaintiffs' rights.  There is also complaint as to the procedure under which these by-laws were adopted.  The complaint prays this court to declare the by-laws of 1907 unlawful and to enjoin action under them and for such other relief as may be necessary and proper.

The complaint also recites that an actual controversy exists in the Society as to the failure of the board of managers to oppose a certain statute enacted by the Legislature of this State with respect to the requisition of dumb animals for scientific experimentation and that the board of managers refused to follow the desires and requests of a majority of the members to oppose this law. No specific relief is asked from the court with respect to this phase of the controversy. In any event, it is plain that the policy of a corporation with respect to a law of this State is to be determined in the discretion of the directors or managers as to which the courts would not interfere.

We thus have an action in which the sole question presented for judicial determination is whether certain by-laws are in conflict with the law of the land or were illegally adopted. Thus, only questions of law are presented which we should now determine. We have examined the complaint and find no actionable violation of plaintiffs' rights sufficiently alleged. Among the contentions of plaintiffs is that defendant is subject to the provisions of the Membership Corporations Law and certain of its by-laws conflict with such statute. We think it is clear that section 2 of the Membership Corporations Law excludes this Society from its provisions as a corporation created by special law.

There appears to be no present justiciable issue as to whether the by-laws were illegally or improperly adopted.

In fact, both the 1900 and the 1907 amendments appear to have been adopted or ratified at meetings of the members of the Society. Whether these amendments had been properly introduced, or proper preliminary steps initiated with respect thereto at some earlier meeting, would seem to us to be academic. The propriety of the preliminaries would appear to be a matter for the members to decide before voting, and since they adopted the amendments, the inference is warranted that they waived any possible procedural irregularity. At least, the matter would hardly appear to be available to members who joined the Society many years after 1907. The lapse of almost fifty years would seem to make any present complaint as to procedure in adoption untenable, and we find that plaintiffs' contentions as to the impropriety in adopting the 1900 or 1907 by-laws are not shown. In any event, summary judgment would have to be awarded defendant concerning any claim as to the improper adoption of these by-laws if the controversy be

assumed to present a justiciable issue. Further, the adoption of the 1907 by-laws would eliminate as immaterial complaint of impropriety in adopting the 1900 by-laws.

Aside from impropriety in adoption, the plaintiffs' principal complaint is that the board of managers has unlawfully usurped too much power to itself with respect to acceptance of new members and expulsion of present members and in respect to self-perpetuation of control by selection of successors when vacancies occur in the board of managers. In the absence of any complaint that any particular applicants were improperly excluded from membership or any members unlawfully expelled — and no such claims are made — it would appear that the complaint asserts no actionable wrong in these matters.

As to the so-called '' self-perpetuation '' by the board controlling election of their successors, it is clear that in the case of a membership corporation organized for charitable or nonprofit purposes such provisions in corporate by-laws do not infringe on any property or other enforcible right of ordinary members and are not illegal (See *Matter of Mount Sinai Hosp.*, 250 N. Y. 103).

It is true that the *Mount Sinai* case represented a change in corporate powers by legislative action, and, of course, the only restriction on the Legislature would be one of constitutional limitation. We deem, however, that what was said in that case as to the reasons why some degree of self-perpetuation is permissible in the governing bodies of charitable corporations to be equally applicable here where the so-called '' perpetuation '' was provided by amendments to by-laws.

Perhaps the provisions in the by-laws that five managers would constitute a quorum of its board run counter to the present requirements of section 27 of the General Corporation Law, and, therefore, it might be improper for the board to attempt to act by a vote of five though the by-laws were lawful when adopted. But there is no claim that defendant has ever attempted to adopt any resolution by a vote of five, and until it does so, there appears to be no necessity for judicial action or declaration on the subject.

We find no statement of facts that affords a basis for the award of judgment demanded for plaintiffs and, therefore, dismiss the complaint.

BASTOW, J. (dissenting). Involved in this appeal is the question whether the defendant corporation without conforming to the provisions of its then existing by-laws may amend such

by-laws and place in sole possession of its board of managers the power to elect its successors and to control any future amendment of the by-laws. That *Matter of Mount Sinai Hosp.* (250 N. Y. 103) is authority for the proposition that the Legislature may disfranchise members of a charitable corporation and make a board of trustees self-perpetuating cannot be denied and is not disputed.

The plaintiffs are members of the defendant and seek a judgment declaring that by-laws adopted in 1907 are invalid and void. The defendant was organized pursuant to the provisions of chapter 469 of the Laws of 1866. It was empowered thereby '' to form a code of by-laws, not inconsistent with the laws of this State or of the United States, which code when formed and adopted at a regular meeting, shall, until modified or rescinded, be equally binding as this act upon the society, its officers and members.''

On April 23, 1866, the first by-laws were adopted by the members of the defendant. These provided, among other things, that the officers were to be chosen annually by ballot from among the members of the Society and that no alteration in the by-laws should be made unless openly proposed at a meeting of the Society entered on the minutes with the name of the member proposing the same and adopted at a subsequent meeting by a vote of two thirds of the members of the Society then present.

It appears from the record before us that these two provisions remained unchanged from 1866 to 1900. In the latter year new by-laws were adopted. These were not '' openly proposed at a meeting of the Society '' and adopted at a subsequent meeting. They were proposed at a meeting of the board of managers on January 11, 1900, and adopted on the same date at the annual meeting of the Society.

The new by-laws radically changed those adopted in 1866. It was provided that the officers should be a president, ten vice-presidents, a secretary, a treasurer and an executive committee of fifteen members. These twenty-eight officers constituted the board of managers which became a self-perpetuating body by virtue of a provision that all officers were to be chosen by the board. The members were deprived of any power to alter the by-laws. No alteration could be made unless proposed at a meeting of the board of managers and then approved by the board at a subsequent meeting.

There are indications that in the ensuing years the board had doubts as to the wisdom of its newly acquired power if not the legality thereof. Thus we find at a meeting of the board on December 5, 1906, a special committee on by-laws recommended election each year of seven board members — four to be elected by the board and three by the Society. The minority report favored "keeping control of the election of its successors in the Board of Managers, without intervention by the members of the Society". The views of the minority members of the special committee prevailed and the power remained in the board by a vote of nine to seven.

At the annual meeting of the Society on January 10, 1907, the by-laws were again amended. The subterfuge by which the board elected the officers and members of the executive committee, who constituted the board of managers, was abandoned. The new by-laws provided for a board of managers of twenty-one members of the Society and gave the board "full power to fill any vacancies which may occur from time to time in its own number" and the power to elect its successors. These by-laws were not "openly proposed at a meeting of the Society" and adopted at a subsequent meeting but were first proposed at a special meeting of the board on December 5, 1906. The final details of the planned changes were agreed upon at a meeting of the board on January 9, 1907 — the day before the annual meeting.

At the meeting of the board on December 5, 1906, a resolution was passed that the by-laws be amended to provide that nominations for members of the board should be made by a nominating committee of six members — three chosen by the board and three elected by the Society. This amendment was adopted at the annual meeting in 1907. This limited power restored to the members was more illusory than real. If the votes of the nominating committee should be evenly divided no nominations could be made and presumably the board would fill the vacancies.

A justiciable issue is presented as to the validity of defendant's by-laws. The alteration of the by-laws by which the members were deprived of the power to elect members of the board of managers and to alter the by-laws was not done in accordance with the provision of the then existing by-laws. *Matter of Mount Sinai Hosp.* (250 N. Y. 103, *supra*), to which reference has been made, is not authority to the contrary. That charitable corporation was incorporated in 1852 under a general

act (L. 1848, ch. 319). The enactment contained a provision — almost identical to that in the act incorporating the defendant — authorizing the corporation " to make by-laws for the management of its affairs, not inconsistent with the constitution and laws of this state, or of the United States ". When the hospital undertook to create a self perpetuating board of trustees it did not attempt to do so by amendment of its by-laws but returned to the Legislature, which enacted chapter 17 of the Laws of 1925 authorizing the successors of the respective classes of trustees to be elected by a majority vote of the remaining members of the board of trustees upon the expiration of the terms of the respective classes. The problem posed was succinctly set forth in the opinion (p. 110) as follows: " We have the act of 1925, challenged as unconstitutional by two members who assert that the board of trustees may not accept the amendment without their consent. They rest on the proposition that, so long as they choose to remain members of the corporation, the Legislature may not, under the reserved power to amend the corporate charter, without their consent, deprive them of their right to vote for trustees."

The court held that under the reserved power of amendment the Legislature could disfranchise the members and make the board self-perpetuating. Some of the language in the opinion taken out of context might seem to sustain the contentions of the defendant in this action. In substance the court said that members had the bare right to vote for trustees and " took the risk of a true amendment ". Here it would seem there were no " true amendments " but amendments made in plain violation of the by-laws existing at the time.

The defendant is something more than a membership corporation. It has received broad grants of power from the Legislature. Since 1894 it has been empowered to issue dog licenses in the city of New York and to collect fees for such which are for the use of the Society. Police powers have been granted the officers and agents of the Society. (L. 1894, ch. 115; L. 1895, ch. 412; L. 1902, ch. 495; L. 1950, ch. 303; L. 1953, ch. 180.) No corporation for the prevention of cruelty to animals may be incorporated in this State without the approval of the defendant or an order of a justice of the Supreme Court dispensing with such approval on notice to the defendant. It actively exercises this right throughout the State. (See *Matter of Warren Co. Soc. for Prevention of Cruelty to Animals*, 123 N. Y. S. 2d, 419.)

If the defendant is operating under invalid by-laws, such a determination should be made. Upon a trial all of the facts could be developed and a determination made, among other things, as to whether the action taken in 1900 was a mere irregularity which has been waived. Upon the record before us it would seem doubtful if life could be breathed into the by-laws of 1900 and 1907 with the passing of any number of years. The plaintiffs contend that the members have been totally deprived of their right to elect members of the board or to alter the by-laws in violation of the act of incorporation and the by-laws adopted by the defendant in 1866. This is denied by the defendant. There is no statutory limitation upon the bringing of an action for declaratory judgment and one brought should be entertained when it will serve a practical end in determining and stabilizing an uncertain or disputed jural question (*Kirn* v. *Noyes,* 262 App. Div. 581, 584).

The complaint states a cause of action and the defendant is not entitled to summary judgment. The order should be affirmed.

DORE, J. P., and BOTEIN, J., concur with CALLAHAN, J.; BASTOW, J., dissents and votes to affirm in opinion in which COHN, J., concurs.

Order reversed, with $20 costs and disbursements to the appellant and motion granted.