In the Matter of FELICIA SHPRITZER, on Behalf of Herself and Others Similarly Situated, Respondent, v. THEODORE H. LANG et al., Constituting the Civil Service Commission of the City of New York, Appellants.

First Department, November 27, 1962.

*Robert L. Ellis* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for appellants.

*William Goffen* for respondent.

*Arnold Hoffman* for New York Civil Liberties Union, *amicus curiæ.*

STEVENS, J. Petitioner in this class action instituted an article 78 proceeding to review a determination of respondents-appellants, herein Commission, which declared petitioner and all other policewomen ineligible to participate in an examination for promotion to police sergeant. Special Term granted the application to the extent of directing a trial of the issue, and left to determination by the trial court whether or not it reasonably may be concluded that policewomen could reasonably perform such assignments in the Police Department, currently performed by male sergeants, so as to warrant promotion of policewomen.

Commission appeals from that order which was entered January 4, 1962.

Petitioner, holder of the degree of master of public administration, with a major in police science, was appointed a policewoman on October 30, 1942. In November, 1943 she was assigned to the Juvenile Aid Bureau (now the Youth Division) of the Police Department, where she presently serves. Prior to May 6, 1961, petitioner filed an application for leave to take the examination for promotion to the position of sergeant, which examination was scheduled to be and was held on May 6, 1961.

On April 21, 1961, Commission, by written communication, notified petitioner that she was ineligible to take the examination because she was "not permanently employed in an eligible title". An appeal therefrom was denied by Commission. The petition alleges discrimination because of sex, and a violation of certain constitutional rights. Commission in its answer pointed out that in the notice of open competitive examination for policewoman, in which petitioner participated on May 21, 1938, no promotion opportunities were stated. There are differences

between the qualifying physical examination for patrolman and for policewoman; the duties of patrolman and policewoman are not identical; promotions, pursuant to section 434a–13.0 of the Administrative Code of the City of New York, are limited to male members of the Police Department; a female member of the force cannot perform all the duties required of the position of sergeant and there is but one rank and grade of women police officers, namely, policewoman.

Affidavits and documents were submitted in support of the respective positions of the parties.

On appeal, Commission urges (1) it was error to have directed a trial for the purpose stated, and the statutory restriction of promotion in the Police Department to male officers is clearly reasonable. Commission further asserts (2) the provisions of the Administrative Code which limit female police officers to the single rank of policewoman clearly and unambiguously bar the promotion of policewomen to sergeant.

Petitioner argues on this appeal: (1) the applicable statutes properly construed do not deprive policewomen of their rights to participate in promotional examinations; and (2) a deprivation of the civil right of women to participate in promotional examinations in the Police Department is unconstitutional.

Commission is a part of the Department of Personnel. Its organization, duties and powers are provided for and declared in chapter 35 of the New York City Charter. Section 814, entitled "Appointments and promotions", provides that "[a]ll appointments, promotions and changes in status of persons in the public service of the city shall be made in the manner prescribed by the constitution of the state and in accordance with the provisions of the civil service law and other provisions of law not inconsistent therewith nor with this charter."

There is no dispute that petitioner is engaged in public service.

Section 6 of article V of the Constitution of the State of New York, states, in part: "[a]ppointments and promotions in the civil service of the state and all of the civil divisions thereof * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive". The section continues preferences granted under former section 6 to male and female members of the armed forces, honorably discharged, and provides for certain credits in original and promotional competitive examinations in lieu of such preferences.

Under the language quoted above, unless it is not practicable the Constitution mandates promotion regardless of sex for those in civil service, by or as a result of competitive examination.

In article 4 of the Civil Service Law, the State Civil Service Department or municipal commission having jurisdiction may limit eligibility (to take the examination) '' to one sex when the duties of the position involved relate to the institutional or other custody or care of persons of the same sex, or visitation, inspection or work of any kind the nature of which requires sex selection.'' (Civil Service Law, § 50, subd. 7.) A similar provision exists for certification from eligible lists (§ 60, subd. 2). The power of appointment rests, of course, in the appointing body or officer.

Since a distinction based on sex is permitted when the duties of the position or nature of the work involves or requires sex selection, it becomes relevant to ascertain the duties and functions of the Police Department, and in particular, whether there is a reasonable limitation on the work of policewomen by reason of the permitted distinction.

'' The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages or assemblages which obstruct the free passage of public streets '' and other general duties including traffic regulation and control, inspection of places of public amusement, etc. (New York City Charter, § 435). Nothing in the broad language of section 435 necessarily involves or is restricted to sex selection, so we must look to the Administrative Code to learn the duties of policewomen and, since petitioner is assigned to the Youth Division (formerly Juvenile Aid Bureau), if there is a specific restriction applicable to petitioner.

In composition the Police Department of the city is permitted up to 6 sergeants for each 50 patrolmen (Administrative Code, § 434a–1.0, subd. 3). ('' Words of the masculine gender include the feminine and neuter ''. General Construction Law, § 22.) The Police Commissioner is empowered to appoint women police officers '' for the increased moral protection of women and minors, for the prevention of delinquency among such women and minors, *and for the performance of such other duties as he may assign to them.*'' (*Ibid.*, § 434a–2.0, emphasis supplied.) The provisions relating to salaries, pensions, appointments and removal apply alike to policewomen and policemen (§ 434a–2.0, subd. b). The Juvenile Aid Bureau is '' organized and maintained for the prevention of crime and delinquency among minors *and for the performance of such other duties as the commissioner may assign thereto* '', with the further provision (b) '' [a]ny

member of the force assigned to such juvenile aid bureau shall retain his or *her* rank and pay in the force and *shall be eligible for promotion* as if serving in the uniformed force and the time served in such bureau shall count for all purposes as if served in *his or her rank or grade* in the uniformed force of the department." (*Ibid.,* § 434a–4.0, emphasis supplied.)

The sections quoted imposed no promotional limitations because of sex, nor are the duties required specifically restricted to those involving sex selection. In fact persons assigned to the Juvenile Aid Bureau expressly have their eligibility for promotion protected. Moreover, promotions are to be made "on the basis of seniority, meritorious service and superior capacity" with " [i]ndividual acts of personal bravery or honorable service " in the armed services, including the army " nurse corps in time of war to be treated as an element of meritorious service in such [competitive promotional] examination " (Administrative Code, § 434a–13.0). Sergeants are to be selected from among patrolmen of the first grade (§ 434a–13.0, subd. b).

Despite the language of the sections referred to, Commission asserts the provision " [t]here shall hereafter be but one rank and grade of women police officers in the uniformed force of the department and they shall be known as policewomen " (§434a–2.0, subd. d) effectively disposes of any contention that policewomen should be eligible for promotional examination to sergeant. However, the language quoted was enacted in Local Law No. 61 of the Local Laws of 1937 of the City of New York, and the sentence immediately following is enlightening. " Policewomen and patrolwomen now in office shall become and have all the rights and privileges of and shall be graded as patrolmen and shall be called policewomen " (*Ibid.*). The legislation was designed, apparently, to abolish distinctions between classes of female police officers, and to confer upon policewomen the rights and privileges of patrolmen. The omission of the latter sentence from subdivision d of section 434a–2.0 of the Administrative Code may readily be explained since the distinctions the local law was designed to abolish no longer exist. Nothing in the code or charter warrants a view of express or implied repeal of the conferring of all rights and privileges of patrolmen upon policewomen (cf., generally, McKinney's Cons. Laws of N. Y., Book 1, Statutes, §§ 371, 391 *et seq.*). Such a construction obviates the necessity of passing upon the constitutionality of the section. For a construction that it authorized discrimination solely because of sex might render it suspect. It is asserted and not disputed there are now actually five grades of policewomen, as there are patrolmen, plus three grades of female detec-

tives, corresponding exactly to the three grades of male detectives. Policewomen do undercover work in detecting offenders against our narcotics laws. The rules of the department prescribe the duties of sergeants (Rules and Procedures of Police Dept., ch. 1, par. 16.3). They prescribe, also, the duties of patrolmen or policewomen in the same general terms (*ibid.*, par. 16.4).

We find no prohibition in statute or rule against the eligibility of policewomen to take the promotional examination for sergeant. To place such a construction upon the language of subdivision d of section 434a–2.0 of the Administrative Code is unwarranted, unreasonable, and demonstrates an archaic approach in light of modern-day conditions. Moreover, such a construction amounts to a denial of petitioner's constitutional rights solely because of her sex unless it be demonstrated that some rational basis exists for the distinction.

It is recognized that there are differences between the qualifying physical examination of patrolmen and policewomen, and also between the medical standards and regulations for the positions. It is recognized also that physical differences exist which might exclude either from duties which might better be performed by the other. There are, however, some 278 policewomen in the Police Department. Nothing in the broad definition of the duties of sergeant (Rules and Procedures of the Police Dept., par. 16.3) are clearly impossible of performance by policewomen because of sex. There are practical physical problems which warrant reasonable distinctions because of facilities, and even the very nature of a particular problem may necessitate a uniquely desirable approach, independent of considerations of sex. The Commissioner remains vested with discretionary power to use his best judgment. We hold no more than that petitioner and others similarly situated cannot be arbitrarily denied the right to take the examination for sergeant because of their sex, and no reasonable grounds have been shown to warrant the " sex selection " evidenced.

From the record women are serving as superior police officers in other cities of this country and in London as well. We would suppose, in the absence of contrary evidence, that the problems of law enforcement officers in such cities differ more in degree than in kind from those encountered here. The capacity and ability of females to hold a superior office in a police department has been demonstrated by the experience of other cities. We conclude that the denial of eligibility is solely because of sex, is unwarranted in law and, in light of present-day conditions constitutes an abuse of discretion (cf. *People ex rel. Arden* v. *Gal-*

*lagher,* 160 App. Div. 27 [1913] for a contrary view; cf. *People* v. *Crane,* 214 N. Y. 154).

The cases cited by Commission involved acts done by the State in the exercise of its police power and are not applicable. " The fixed rule and basic standard by which the validity of the police power is tested is that the police power of the state extends only to such measures as are reasonable &ast; &ast; &ast; that is, the means adopted must be reasonably necessary and appropriate for, and reasonably adapted and designed to accomplish, an object falling within the legitimate scope of the police power." (9 N. Y. Jur., Constitutional Law, § 176.)

" In its most comprehensive sense it [police power] embraces the whole system by which the state seeks to preserve the public order, to prevent offenses against the law, to insure to citizens in their intercourse with each other the enjoyment of their own so far as is reasonably consistent with a like enjoyment of rights by others." (*Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 271, 300.) " It covers a multitude of things that are designed to protect life, limb, health, comfort, peace and property according to the maxim *sic utere tuo ut alienum non lœdas,* but its exercise is justified only when it appears that the interests of the public generally, as distinguished from those of a particular class, require it, and the means used are reasonably necessary for the accomplishment of the desired end, and are not unduly oppressive." (*Ibid.,* p. 301.)

Tested by this standard subdivision d of section 434a-2.0 of the Administrative Code was not enacted in the exercise of the police power. It was designed to abolish inequitable distinctions between members of a particular class (Local Laws 1937, No. 61 of City of New York). To construe it otherwise would require a determination that this was an attempt to unduly and improperly hamper the right of a citizen " to pursue, unmolested and without unreasonable regulation, any lawful calling or avocation which he may choose " (*Ives* v. *South Buffalo Ry. Co., supra,* p. 301), with the additional right to be afforded a promotional opportunity unless the public interest, public safety, public morals, or general welfare demanded such exclusion. The fact that females do hold superior police offices elsewhere and apparently perform their work satisfactorily would seem to undermine the validity of any contention that their exclusion from a promotional job opportunity is required. If that is so, and the contrary is not established by the record before us, to deny equality of privilege and opportunity would result in a denial of equal protection of the laws, and legislation designed to effect such a result would be invalid. (*Hauser* v. *North British &*

*Mercantile Ins. Co.*, 206 N. Y. 455, 462; *People ex rel. Duryea* v. *Wilber,* 198 N. Y. 1; cf. *Matter of Mt. Sinai Hosp.*, 250 N. Y. 103.) (See, also, U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11.)

The order appealed from should be modified on the law and the facts to grant petitioner's motion in its entirety, without costs, and as so modified, otherwise affirmed.

BREITEL, J. P., VALENTE, McNALLY and BERGAN, JJ., concur.

Order, entered on January 4, 1962, unanimously modified, on the law and the facts, to grant petitioner's motion in its entirety, without costs, and, as so modified, is otherwise affirmed.