COURT OF CHANCERY
OF THE
STATE OF DELAWARE

CHRISTIAN DOUGLAS WRIGHT
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE  19801-3734

April 16, 2026

Daniel A. Griffith, Esquire
Whiteford, Taylor & Preston, L.L.P.
600 N. King Street, Suite 300
Wilmington, DE  19801

Marion Quirk, Esquire
Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE  19801

Re:    *In the Matter of The Stephen A. Marks Foundation, Inc.*,
C.A. No. 2025-0337-CDW

Dear Counsel:

Petitioner Mary Marks ("Petitioner") has filed an Amended Verified
Petition for Instructions ("Amended Petition") regarding The Stephen A. Marks
Foundation, Inc. ("Foundation").[1]  Petitioner asks the court to validate her
election as the sole director of the Foundation as of August 9, 2023, a date
approximately six months before the special meeting at which she was
purportedly elected.[2]  The Attorney General does not object to the court
confirming Petitioner's election but objects to the proposed effective date.[3]  The

---

[1] Dkt. 13 ("Am. Pet.").

[2] *Id.* ¶¶ 13, 17.

[3] Att'y Gen. Resp. to Am. Verified Pet. for Instructions, Dkt. 14 ("AG Resp.") at 1.
The Attorney General has a long-standing common law responsibility to protect the
interests of the beneficiaries of charitable organizations governed by Delaware law.
*See Oberly v. Kirby*, 592 A.2d 445, 467–68 (Del. 1991).

Attorney General says the effective date of Petitioner's appointment should be no earlier than March 31, 2025, when Petitioner filed this action.[4] I conclude, for the same reasons I explained during the October 15, 2025 status conference on the original Verified Petition for Instructions ("Petition"),[5] that I cannot grant the relief requested, so I must deny the Amended Petition.

## I.  BACKGROUND

The facts are drawn from the Amended Petition, the Petition, and the exhibits attached to both. I take the averments as true for purposes of this ruling but have not engaged in any formal fact-finding.

The Foundation was formed on October 23, 2007, when an incorporator filed a certificate of incorporation with the Division of Corporations.[6] The Certificate states that the Foundation is organized and must be operated solely as an entity exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code.[7] The Certificate says the Foundation has neither stock nor members,[8] and it designates Stephen A. Marks, Petitioner's husband, as its

---

[4] AG Resp. 1.

[5] Dkt. 1 ("Pet.").

[6] Certificate of The Stephen A. Marks Found., Inc., Am. Pet. Ex. A, Dkt. 13 ("Certificate") at 1; *see also* Am. Pet. ¶ 3.

[7] Certificate, art. 3d; *see also* Am. Pet. ¶ 2.

[8] Certificate, arts. 4th, 5th; *see also* Bylaws of The Stephen A. Marks Found., Inc., art. VI, Pet. Ex. E, Dkt. 1 ("Bylaws") ("The Corporation shall not have members and shall have no authority to issue shares of stock.").

sole director.[9] Mr. Marks created the Foundation as a vehicle for "the distribution of monies for charitable and other tax-exempt purposes and providing educational activities and scholarships in the areas of marketing and broadcast journalism."[10]

Mr. Marks passed away on May 11, 2022.[11] Mr. Marks' estate ("Estate") was promptly opened and Petitioner appointed as its personal representative.[12] Mr. Marks was, at the time of his passing, still the Foundation's only director.[13] So his untimely death left the Foundation rudderless—no directors, no officers, no members—but the Foundation continued to do its work, distributing approximately $80,000 to various charities and non-profits on or about August 9, 2023 ("Donations").[14]

According to the Petition, on or about March 12, 2024, Petitioner and the Estate sent a written communication purporting to notify "all interested parties" that the Foundation would hold a special meeting at which new leadership

---

[9] Certificate, art. 11th.

[10] Am. Pet. ¶ 3.

[11] *Id.* ¶ 4.

[12] Pet. ¶ 5; *see also* Pet. for Admin., *In re Estate of Stephen A. Marks*, Est. No. 106587 (Anne Arundel Cnty. Reg. of Wills), Pet. Ex. B, Dkt. 1.

[13] Am. Pet. ¶ 4.

[14] *Id.* ¶ 7. It appears that Petitioner caused the Donations to be made. *See id.* at 4 ("Ms. Marks and the other parties involved were completely unaware that she lacked capacity to make the Donations . . . . [T]he checks were signed and distributed by Ms. Marks and the bank to which the Foundation's funds were held.").

would be appointed.[15]  The Petition alleges a meeting "was held" on March 25, a vote "was taken," and Petitioner "was selected as the next Director of the Foundation."[16]  On September 6, Petitioner, through counsel and purportedly on behalf of the Foundation, filed an amendment to the Certificate to change the name of the Foundation's sole director from Mr. Marks to Petitioner.[17]

On March 31, 2025, Petitioner, as the personal representative of the Estate, filed the Petition and provided notice to the Attorney General.[18]  Invoking Sections 222 and 223 of the Delaware General Corporation Law ("DGCL"),[19] Petitioner asked the court to issue an order appointing Petitioner as the director of the Foundation and backdate that appointment to May 11, 2022, the day Mr. Marks passed away.[20]  The Petition did not say why Petitioner wants the appointment backdated.

The Attorney General, through the Delaware Department of Justice, entered her appearance as an interested party on May 1.[21]  Following

---

[15] Pet. ¶ 6.  The "interested parties" referred to in the Petition appear to be the same people on whose behalf the notice was sent:  Petitioner and the Estate.  *See id.* Ex. C (identifying Petitioner and the Estate as the addressees).

[16] Pet. ¶ 8.

[17] *Id.* ¶ 9; *id.* Ex. D.

[18] Pet. ¶ 31.

[19] 8 *Del. C.* §§ 101–398.

[20] Pet. Prayer for Relief A.

[21] Dkt. 2.

discussions between Petitioner and the Attorney General,[22] the Attorney General filed a letter on August 7, stating she did not oppose Petitioner's appointment as the sole director of the Foundation but objected to Petitioner's request to backdate the appointment.[23] On August 12, Petitioner filed a letter responding to the Attorney General's letter and requesting a hearing date.[24] In that letter, Petitioner explained that she is asking for her appointment to be backdated because "[i]f the appointment of [Petitioner] is not applied retroactively to the date of Mr. Marks' death, the [charitable] distributions [made on August 9, 2023] should be held invalid and thus the general public and recipients of the distributed funds would be harmed."[25] Petitioner asserted that the court has the authority to backdate the appointment under Sections 204 and 205 of the DGCL, and cited the court's opinion in *In re Numoda Corporation Shareholders Litigation* as authority for that result.[26]

---

[22] *See* Dkt. 3.

[23] Dkt. 4.

[24] Dkt. 5.

[25] *Id.* at 5.

[26] *Id.* at 3–4 (citing *In re Numoda Corp. S'holders Litig.*, 2015 WL 402265 (Del. Ch. Jan. 30, 2015) ("*Numoda*"), *aff'd sub nom.*, *In re Numoda Corp.*, 128 A.3d 991 (Del. 2015) (TABLE)).

On August 21, 2025, I granted Petitioner's hearing request.[27]  The court held a status conference with Petitioner and the Attorney General on October 15, 2025.[28]  At the status conference, I granted Petitioner leave to file the Amended Petition, in which Petitioner intended to address concerns raised by the court and change the requested relief to backdate Petitioner's appointment to August 9, 2023 (the date on which Petitioner made the Donations in the Foundation's name).[29]

Petitioner filed the Amended Petition on January 16, 2026.[30]  The only relief requested in the Amended Petition is for the court to validate Petitioner's election as the Foundation's director effective August 9, 2023.[31]  Petitioner does not cite or rely on any new authority in the Amended Petition for the relief requested, once again invoking Sections 204 and 205 of the DGCL and *Numoda*.[32]  Petitioner does, however, paint an alarming picture of what she says will happen if the court does not backdate her election as director:  "it will

---

[27] Dkt. 8.

[28] *See* Jud. Action Form, Dkt. 11; Tr. of 10-15-2025 Status Conf., Dkt. 12 ("Tr.").

[29] Tr. 34–36.

[30] *See* Am. Pet. 1

[31] *Id.* Prayer for Relief A.  Petitioner suggested at the status conference that the Amended Petition would also seek an order appointing Petitioner as the Foundation's sole member.  *See* Tr. 34–35.  Petitioner is now of the view that resolving the Foundation's lack of a member, which will require amending both the Certificate and the Bylaws, can be done later.  *See* Am. Pet. ¶¶ 14–16.

[32] Am. Pet. ¶¶ 10–12.

create a chilling effect on this area of the law that is directly adverse to public policy" because the situation in which the Foundation finds itself is "all too common in this area of law."[33]  According to Petitioner, if the court declines to backdate her election, other similarly situated entities will never fix their similar problems and the court will be responsible for having "facilitated a process by which entities that have capacity issues will be operating without authority in the State of Delaware and abroad."[34]

On January 20, the Attorney General filed a letter confirming her position has not changed:  she consents to Petitioner's appointment as director but objects to an effective date earlier than March 31, 2025.[35]

## II.    ANALYSIS

As noted in Part I, with respect to Petitioner's appointment as the Foundation's sole director, she says Sections 204 and 205 of the Delaware General Corporation Law authorize the court to backdate her election to a date earlier than March 31, 2025, and that the court's opinion in *Numoda* supports this.[36]  Having considered the matter once again, I reject Petitioner's argument.

---

[33] *Id.* ¶ 12.e.

[34] *Id.*

[35] AG Resp. 2.

[36] Am. Pet. ¶ 12.e.

Sections 204 and 205 were added to the Delaware General Corporation Law, effective April 1, 2014, to provide corporations with two paths to validate corporate acts that, due to a failure of authorization, would otherwise have been void or voidable. *Numoda*, 2015 WL 402265, at *7. Section 204 is a "self-help" provision that allows a board of directors, by following a "roadmap" laid out in the statute, to validate an act taken by the corporation that would otherwise be invalid. *Id.* If judicial intervention "is preferable or necessary," such as when there is no valid board of directors in place, Section 205 provides an alternative method by which the corporation can seek validation of the invalid corporate act. *Id.*

Petitioner seeks relief under Section 205.[37] Under Section 205, the court is authorized to "[d]eclare that a defective corporate act validated by the Court shall be effective as of the time of the defective corporate act," 8 *Del. C.* § 205(b)(8), and to "[m]ake such other orders regarding such matters as it deems proper under the circumstances," *id.* § 205(b)(10).[38] A "defective corporate act" is "any act or transaction purportedly taken by or on behalf of the corporation that is, and at the time . . . would have been, within the power of a corporation . . . but is void or voidable due to a failure of authorization." *Id.*

---

[37] *Id.* 1 & ¶ 10.

[38] *See also Numoda*, 2015 WL 402265, at *7.

§ 204(h)(1). There are six categories of parties who, in the case of a charitable nonstock corporation like the Foundation,[39] may be eligible to file an application seeking relief from the court under Section 205:

(1)   the corporation;

(2)   any successor entity to the corporation;

(3)   any member of the board of directors;

(4)   any record or beneficial holder of a valid or putative membership in the corporation;

(5)   any record or beneficial holder of a valid or putative membership in the corporation as of the time of a defective corporate act ratified under Section 204; and

(6)   any other person claiming to be substantially and adversely affected by a ratification under Section 204.

*See id.* § 205(a); *see also id.* § 114(a) (applying Section 205 to nonstock corporations).

The foregoing language reveals two problems with Petitioner's request. First, Petitioner is not within any of the six categories of parties who are authorized to seek relief from the court under Section 205. Petitioner is not the Foundation itself or a successor entity to the Foundation, so categories (1) and

---

[39] *See* 8 *Del. C.* § 114(d)(1) ("A 'charitable nonstock corporation' is any nonprofit nonstock corporation that is exempt from taxation under § 501(c)(3) of the United States Internal Revenue Code . . . or any successor provisions.").

(2) do not apply. Petitioner is not a member of the Foundation's board and she is not, either personally or in her capacity as the personal representative of the Estate, a record or beneficial holder of a membership in the Foundation,[40] so categories (3) and (4) do not apply.[41] And there has been no ratification of a defective corporate act by the Foundation's board under Section 204, so categories (5) and (6) do not apply.

---

[40] The Estate does not hold Mr. Marks' membership in the Foundation because the membership did not transfer to the Estate when Mr. Marks died. *See Wier v. Howard Hughes Med. Inst.*, 407 A.2d 1051, 1054–55 (Del. Ch. 1979) ("[U]nlike stock in a business corporation, membership in a non-stock corporation may not be transferred or inherited unless the corporate charter or by-laws of such a corporation so provide[.]") (first citing *McCaffrey v. Pittsburgh Athletic Ass'n*, 293 A.2d 51, 56 (Pa. 1972); then citing *In re Mt. Sinai Hosp.*, 164 N.E. 871, 875 (N.Y. 1928); and then discussing Zechariah Chafee, Jr., *The Internal Affairs of Associations Not for Profit*, 43 HARVARD L. REV. 993, 997 (1930)); *see also Wier*, 407 A.2d at 1056 ("[W]here the donor has effectively passed out of himself all interest in the fund devoted to charity, neither he nor those claiming under him have any standing in a court of equity as to its disposition and control.") (quoting what was then 14 C.J.S. *Charities* § 58). Here, the Certificate and the Bylaws say the Foundation has no members, so they naturally do not provide for the transfer or inheritance of membership in the Foundation. Nor did Mr. Marks have any interest in the Foundation's assets or profits. *See* Certificate, arts. 6th.A. ("No part of the assets or net earnings of the [Foundation] shall inure to the benefit of, or be distributable to, the [Foundation]'s directors, officers, members, employees or any other persons[.]"), 7th (stating how the Foundation's assets must be distributed if the Foundation is dissolved or liquidated); *see also* Bylaws § 3.1(a) (restating Certificate, art. 6th.A.), art. XV (restating Certificate, art. 7th).

[41] Compare Petitioner with the Section 205 claimant in *Applied Energetics, Inc. v. Farley*. The individual there was "the sole remaining director who attempted to take the defective corporate acts, and he is a holder of putative stock." 239 A.3d 409, 448 (Del. Ch. 2020). He was someone who could legitimately claim to have power to act on the corporation's behalf and thus was within the universe of parties Section 205 contemplates as having standing to seek relief. *Id.*

Second, even if Petitioner were eligible to seek relief under Section 205, the court cannot grant Petitioner the relief she seeks—backdating her election as a director—because "[e]mbedded within the definition of defective corporate act is the premise that an act, albeit defective, had occurred."  *Numoda*, 2015 WL 402265, at \*9 (quoting C. Stephen Bigler & John Mark Zeberkiewicz, *Restoring Equity: Delaware's Legislative Cure for Defects in Stock Issuances and Other Corporate Acts*, 69 BUS. LAW. 393, 403 (Feb. 2014) ("*Restoring Equity*")).  The *Numoda* court explained why this is so:

> [S]ection 204 implicitly preserves the common law rule that ratification operates to give original authority to an act that was taken without proper authorization, but may not be used to authorize retroactively an act that was never taken but that the corporation now wishes had occurred, or to "backdate" an act that did occur but that the corporation wishes had occurred as of an earlier date.

*Id.* (quoting *Restoring Equity*, *supra* at 403).  The court has affirmed this proposition in the years since it decided *Numoda*.[42]

---

[42] *See, e.g.*, *Knott P'rs v. Boudett*, 2023 WL 4276912, at \*1 n.13 (Del. Ch. June 29, 2023) (stating in *dicta* "allowing a board to fully cure a yearslong series of defective corporate actions by the mere backdated resolution of the defect itself would (if successful) seemingly obviate, or at least undermine, 8 *Del. C.* § 205."); *Applied Energetics*, 239 A.3d at 437 (explaining that under Section 205 "there [must] have been a bona fide effort to exercise corporate power, rather than a backward-looking wistfulness for a past event that never took place" and citing *Numoda* and *Restoring Equity* with approval); *see also Nguyen v. View, Inc.*, 2017 WL 2439074, at \*10 (Del. Ch. June 6, 2017) ("Section 204 is not a 'license to cure just any defect.'") (quoting *Numoda*, 2015 WL 402265, at \*8).

Petitioner's assertion in her Amended Petition that *Numoda* confirms that Section 205 authorizes the court to "retroactively validate a defective corporate act"[43] is of course true, but it does not lead to the result Petitioner wants. Petitioner is not simply asking me to retroactively validate. If she were, the Amended Petition would ask me to declare that Petitioner's election was valid as of March 25, 2024, the date of the defective corporate act for which Petitioner seeks relief (her purported election).[44] Instead, Petitioner is asking me to go further and backdate that relief, to say it occurred six months earlier than it did: August 9, 2023. That would not be validation, it would be time travel. "Parties attempting to invoke the Validation Provisions cannot pretend

---

[43] Am. Pet. ¶ 11.

[44] Petitioner's authority to call the March 25, 2024 special meeting is unclear. Section 223 of the DGCL, by way of Section 114(a), permits the personal representative of the estate of a member of a charitable nonstock corporation to call a special meeting of the members "in accordance with" the corporation's certificate of incorporation and bylaws. *See* 8 *Del. C.* §§ 223(a); 114(a). Neither the Certificate nor the Bylaws provide for member meetings, so there is no way to call a special meeting of the Foundation's members "in accordance with" the Certificate and the Bylaws. Also, while Section 223(a)'s plain language appears to authorize Petitioner (through Section 114(a)) to call a member meeting, the rationale for that authority is absent here because *Wier* establishes that Mr. Marks' membership in the Foundation did not become part of the Estate upon his passing, so Petitioner, as the Estate's personal representative, is not a "fiduciary entrusted with . . . responsibility" over any membership in the Foundation. *See Wier*, 407 A.2d at 1054–55.

that an attempt to act took place when it really did not." *Applied Energetics*, 239 A.3d at 437. I cannot grant the relief sought.[45]

Contrary to Petitioner's warnings,[46] this result does not condemn the Foundation to operating indefinitely without authority, nor does it risk a chilling effect on other charitable nonstock corporations organized under Delaware law.[47] The situation in which the Foundation finds itself can be fixed, just not the way Petitioner wants to do it.[48]

---

[45] The Amended Petition quotes Section 205(b)(8) of the DGCL, which authorizes the court to "[d]eclare that a defective corporate act validated by the Court shall be effective as of the time of the defective corporate act or at such other time as the Court shall determine[.]" *See* Am. Pet. ¶ 10. Petitioner does not explain her reference to Section 205(b)(8), but I infer she believes the phrase "or at such other time" authorizes the court to backdate the date on which a defective corporate act occurred. *Numoda* and *Applied Energetics* foreclose that argument.

[46] *See* Am. Pet. ¶ 12.e.

[47] At the October 25 hearing, the Attorney General identified several recent instances in which the court has granted petitions to appoint a new director for a charitable nonstock corporation lacking any directors or members. *See, e.g.*, *IMO Tabizuru Found.*, C.A. No. 2024-0695-BWD, Order Appointing Hari Garhwal as Director of Tabizuru Found., Dkt. 15; *In re The Krauss Charitable Found.*, C.A. No. 2024-0653-SEM, Order Granting Pet'r's Mot. to Approve Appointment of Dr. Jerome Groopman as Successor Director, Dkt. 6; *IMO The Samuel & Ruth P. Cohen Found.*, C.A. No. 2023-1149-SEM, Order Appointing Successor Director and Member, Dkt. 15. The court was not asked to, and did not, backdate the directorial appointments in any of those cases.

[48] For example, anyone with standing could ask the court to use its equitable authority to appoint Petitioner as a director of the Foundation, without backdating the effective date of the appointment. *See supra* note 47. Once appointed, Petitioner would be able to use the authority granted to a corporation's board by Section 204 of the DGCL to adopt a resolution ratifying the Donations as of the day they were made, or petition the court under Section 205 to validate the Donations as of that same date. *See* 8 *Del. C.* §§ 204(b)(1), 205(a). As noted on the first page of this report, the Attorney

### III.    CONCLUSION

For the foregoing reasons, I recommend that the Amended Petition be denied.  This is a Final Report under Court of Chancery Rule 144(b)(2). Under Court of Chancery Rule 144(d)(2), any party who wishes to file exceptions to this report must file their notice of exceptions by April 27, 2026.

Very truly yours,

/s/ *Christian Douglas Wright*

Magistrate in Chancery

---

General says she does not object to Petitioner's appointment as the Foundation's only director, as long as the appointment is not backdated to a date before Petitioner filed the Petition.  *See* AG Resp. 1.